**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| BOOK PEOPLE, INC., VBK, INC. d/b/a BLUE WILLOW BOOKSHOP, AMERICAN BOOKSELLERS ASSOCIATION, ASSOCIATION OF AMERICAN PUBLISHERS, AUTHORS GUILD, INC., COMIC BOOK LEGAL DEFENSE FUND, <br><br> Plaintiffs, <br><br> v. <br><br> MARTHA WONG in her official capacity as chair of the Texas State Library and Archives Commission, KEVEN ELLIS in his official capacity as chair of the Texas Board of Education, MIKE MORATH in his official capacity as Commissioner of Education, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § § § | CASE NO. 1:23-CV-00858-ADA |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ..................................................................................................................... 2

    A.    This Court has subject-matter jurisdiction over this case. ..................................... 2

        1.    Plaintiffs have Article III standing. .............................................................. 2

        2.    Plaintiffs' claims are ripe. ............................................................................. 6

        3.    Defendants are not entitled to sovereign immunity. ................................... 6

            a.    Defendants are tasked with enforcing HB 900. ................................. 7

            b.    Enforcement of the Book Ban is imminent ........................................ 7

            c.    Injunctive relief would not control Defendants' discretion. ........................................................................................ 8

    B.    Plaintiffs state valid claims for relief. ................................................................... 8

        1.    Plaintiffs assert cognizable claims under 42 U.S.C. § 1983. ..................... 8

        2.    Plaintiff booksellers, publishers, and authors have robust First Amendment rights to distribute books. ...................................................... 9

    C.    Enjoining the Book Ban maintains the status quo. ................................................ 9

    D.    The balance of equities and public interest favor injunctive relief. .................... 10

III. CONCLUSION ................................................................................................................ 10

CERTIFICATE OF SERVICE ................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*303 Creative LLC v. Elenis*,
  143 S. Ct. 2298 (2023)..................................................................................................................3

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967).....................................................................................................................6

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*,
  851 F.3d 507 (5th Cir. 2017) ........................................................................................................7

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979).....................................................................................................................3

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963).......................................................................................................................9

*Benisek v. Lamone*,
  138 S. Ct. 1942 (2018).................................................................................................................9

*Calhoun v. Collier*,
  No. W-20-CA-380-ADA, 2022 WL 2823580 (W.D. Tex. May 26, 2022) ...............................7

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019) ........................................................................................................7

*Consumer Data Indus. Ass'n v. Tex. through Paxton*,
  No. 21-51038, 2023 WL 4744918 (5th Cir. July 25, 2023).........................................................4

*Fayetteville Pub. Library v. Crawford Cnty., Arkansas*,
  No. 5:23-CV-05086, 2023 WL 4845636 (W.D. Ark. July 29, 2023).........................................9

*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000).....................................................................................................................5

*Horne v. Flores*,
  557 U.S. 433 (2009).....................................................................................................................2

*K.P. v. LeBlanc*,
  729 F.3d 427 (5th Cir. 2013) ........................................................................................................6

*Little v. Llano Cnty.*,
  No. 1:22-CV-424-RP, 2023 WL 2731089 (W.D. Tex. Mar. 30, 2023)......................................9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..................................................................................................................2

*Nat'l Press Photographers Ass'n v. McCraw*,
   504 F. Supp. 3d 568 (W.D. Tex. 2020).....................................................................................2

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
   833 F.2d 583 (5th Cir. 1987) ....................................................................................................6

*Opulent Life Church v. City of Holly Springs, Miss.*,
   697 F.3d 279 (5th Cir. 2012) ...............................................................................................6, 10

*Portee v. Morath*,
   No. 1:23-CV-551-RP, 2023 WL 4688528 (W.D. Tex. July 21, 2023)......................................7

*Richardson v. Tex. Sec'y of State*,
   978 F.3d 220 (5th Cir. 2020) ....................................................................................................8

*Smith v. People of the State of California*,
   361 U.S. 147 (1959)..................................................................................................................9

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)..................................................................................................................3

*Verizon Maryland, Inc. v. Public Service Commission of Maryland*,
   535 U.S. 635 (2002)..................................................................................................................6

*Virginia v. Am. Bookseller's Assn., Inc.*,
   484 U.S. 383 (1988)...............................................................................................................1, 3

*Wooley v. Maynard*,
   430 U.S. 705 (1977)..................................................................................................................8

*Ex parte Young*,
   209 U.S. 123 (1908)...............................................................................................................6, 7

**Statutes**

42 U.S.C. § 1983.........................................................................................................................1, 8

Fed. R. Civ. Proc. 65........................................................................................................................1

Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6) .........................................................................................1

TEX. EDUC. CODE 35.002(b) ............................................................................................................9

TEX. EDUC. CODE § 35.002(a)..........................................................................................2, 3, 4, 7

TEX. EDUC. CODE §§ 35.002(c)-(e), 35.003(a) ...............................................................................5

Tex. Educ. Code § 35.003(a)..................................................................................................3

**Other Authorities**

U.S. Const. Amend. I ................................................................................................... *passim*

U.S. Const. Amend. XIV ......................................................................................................1

Plaintiffs Book People, Inc., VBK, Inc. d/b/a Blue Willow Bookshop, American Booksellers Association, Association of American Publishers, Authors Guild, Inc., and Comic Book Legal Defense Fund ("Plaintiffs") file this Reply in Support of their Motion for Preliminary Injunction under Fed. R. Civ. Proc. 65 ("Reply")[1] and ask this Court to enjoin the enforcement of H.B. 900 (the "Book Ban") under 42 U.S.C. § 1983 because it violates the First and Fourteenth Amendments to the U.S. Constitution.

## I. INTRODUCTION

In their Response (Dkt. 19),[2] Defendants attempt to dodge the myriad constitutional infirmities in the Book Ban by spending 37 pages (nearly double the limit) lodging inapplicable procedural hurdles, mischaracterizations of Plaintiffs' arguments, and misunderstandings about the Book Ban.[3] Defendants make claims about the requirements of the Book Ban that conflict with the face of its text and conveniently ignore its imminent harmful effects to Plaintiffs. For example, although booksellers need not submit their lists of ratings until April 1, 2024, they are expressly

---

[1] Although Defendants styled their filing as a "Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and Response in Opposition to Plaintiffs' Motion for Preliminary Injunction" (Dkt. 19), the Reply responds *only* to Defendants' Response in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Response"). It is *not* a formal response to Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion to Dismiss"). Plaintiffs reserve their right to file a separate response to the Motion to Dismiss within 14 days of August 16, 2023. *See* L.R. CV-7(d)(2).

[2] The Response should be struck because it violates Local Rule CV-7(d)(2), which requires that a response to a motion "shall be filed not later than 14 days after the filing of the motion." Plaintiffs filed the Motion (Dkt. 6) on July 25, 2023 and served the Complaint on Defendants on July 28, 2023 (Dkt. 13-15). The Response was thus due by August 11, 2023, at the latest. But Defendants filed the Response on August 16, 2023 at 3:52 p.m., five days after the deadline expired and 41 hours before the hearing on the Motion, leaving Plaintiffs will little time to prepare for the hearing and prepare this Reply.

[3] The Court need not accept Defendants' interpretations of the Book Ban. *See Virginia v. Am. Bookseller's Assn., Inc.*, 484 U.S. 383, 393 (1988) (an Attorney General's interpretation of a state law does not bind courts or local authorities; rejecting an Attorney General's "interpretation of the law as authoritative").

prohibited from selling *any* books to public schools until they have rated every book previously sold to such schools that are in "active use."

> **A library material vendor *may not sell* library materials to a school district or open-enrollment charter school *unless* the vendor has issued appropriate ratings regarding sexually explicitly material and sexually relevant material previously sold to a district or school.**

TEX. EDUC. CODE § 35.002(a) (emphasis added). Thus, Plaintiffs will be required to comply with the Book Ban's onerous and unclear requirements in a matter of days. The Book Ban is effective on September 1, 2023, and it applies to the 2023-24 school year, which has already begun in many school districts. *See* Book Ban §§ 6-7. Accordingly, Plaintiffs request that the Book Ban be immediately enjoined, and no later than before September 1, 2023, to prevent the infringement of their First Amendment rights.

## II.     ARGUMENT[4]

### A.     This Court has subject-matter jurisdiction over this case.

#### 1.     Plaintiffs have Article III standing.

Article III standing exists because the Book Ban has caused Plaintiffs to suffer an injury-in-fact that is traceable to Defendants and will likely be redressed by the issuance of a preliminary injunction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Although only one of the six Plaintiffs needs to satisfy the standing requirement for the Court to grant the Motion, all Plaintiffs have standing in this case.[5] *See Horne v. Flores*, 557 U.S. 433, 446–47 (2009) (in a multi-plaintiff suit, only one plaintiff needs to satisfy the constitutional standing requirements).

---

[4] For brevity, the arguments asserted in Plaintiffs' Motion for Preliminary Injunction ("Motion") (Dkt. 6) will not be repeated here, but they shall be incorporated by reference into this Reply.
[5] The non-bookstore Plaintiffs have associational standing to bring this case on behalf of their members. *See Nat'l Press Photographers Ass'n v. McCraw*, 504 F. Supp. 3d 568, 580 (W.D. Tex. 2020) (recognizing associational standing to bring "facial," "content-based," "vagueness," and "overbreadth" challenges)

Standing rules are unique in First Amendment cases because of the important constitutional issues at stake and fears of chilling speech. In a First Amendment case, "an actual and well-founded fear that the law will be enforced" against the plaintiff suffices for standing. *Virginia v. Am. Bookseller's Assn., Inc.*, 484 U.S. 383, 393 (1988) ("We are not troubled by the pre-enforcement nature of this suit. . . . Further, the alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution."). Prior enforcement of the law is not required to establish standing in a First Amendment case. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014). Instead, a "plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

Plaintiffs have alleged facts showing not only that they have already sustained an injury but also the existence of "an actual and well-founded fear" that the Book Ban will be enforced against them and cause them harm.[6] For example, the Book Ban has already caused Katy ISD to stop purchasing library books,[7] including from Plaintiffs, and caused at least one Plaintiff to lose business.[8]

Injury is imminent because Plaintiffs will be prohibited from selling any books to public schools when the Book Ban takes effect on September 1, 2023. Section 35.002(a) is clear that a bookseller "may not sell library materials" to a public school "unless" it has "issued appropriate ratings regarding sexually explicitly material and sexually relevant material previously sold to a

---

[6] Plaintiffs also having standing under the compelled speech doctrine because a "credible threat" exists that the law will compel them to adopt ratings with which they disagree. *See* TEX. EDUC. CODE § 35.003(a); *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2308 (2023).
[7] *See* Claire Goodman, *Katy ISD halts all library book purchases, new books stored*, HOUSTON CHRONICLE (June 27, 2023), attached as Exhibit A.
[8] *See* Koehler Decl., Dkt. 6-3 ¶ 24.

district or school." Plaintiffs have explained that they cannot comply with these rating requirements because they do not have complete records of books sold to or in "active use" by schools.[9]

Attempts to comply with the burdensome—and nearly impossible—task of reviewing and providing rating for all book in "active use," as required by § 35.002(a), would also injure Plaintiffs.[10] Lucy Podmore, a librarian in San Antonio for Northside ISD, testified during a Senate hearing[11] that in the past school year, her students have read more than 14,000 books from their library and that six school districts alone have library collections totaling over *six million items*.[12] As she explained, requiring booksellers to review and rate all those books would create "unreasonable obstacles" for them.[13]

Further, Defendants have made no public pronouncement, nor do they represent in their Response, that they will not enforce the Book Ban. A state official's failure to state their future intent regarding enforcement can be considered as evidence of potential enforcement. *See Consumer Data Indus. Ass'n v. Tex. through Paxton*, No. 21-51038, 2023 WL 4744918, at *5 (5th

---

[9] Rejsek Decl, Dkt. 6-5 ¶ 9; Koehler Decl. Dkt. 6-3 ¶¶ 7-8; Grogan Decl., Dkt. 6-5 ¶ 6; Stratton Decl., Dkt. 6-4 ¶ 5.

[10] The Legislature has acknowledged the financial burdens of the Book Ban, estimating that it will cost a total of $2.6 million and $0.6 million per year to review books not rated as "sexually explicit" or "sexually relevant." *See* Fiscal Note, 88th Legislative Regular Session, May 11, 2023, attached as Exhibit B.

[11] Hearing on Tex. H.B. 900 before the Senate Comm. on Educ., 88th Leg., R.S. (May 11, 2023) (statement of Lucy Podmore) (available here, from 1:12:30 - 1:14:41).

[12] *See* Sneha Dey & Raul Trey Lopez, *Texas Senate OKs bill that aims to keep sexually explicit material out of school libraries*, THE TEXAS TRIBUNE, May 23, 2023.

[13] To put the burdens in perspective, it took Spring Branch ISD more than 220 hours, $30,000, and 16 employees to review *one book* in an effort to comply with a book removal request. *See also* Shannon Ryan, *More than $30K of taxpayers' money, 220 hours spent on single Spring Branch ISD book ban, docs show*, ABC 13, March 28, 2023. At that rate, meeting the Book Ban's onerous requirements of reviewing thousands of books would take tens of thousands of hours and millions of dollars.

---

Cir. July 25, 2023) ("the Texas Attorney General has never stated or even suggested that the statute would not be enforced in the future").[14]

Here, Plaintiffs' injuries are directly traceable to Defendants, who are tasked with enforcing the Book Ban. Defendant Mike Morath is sued in his official capacity as Commissioner of the Texas Education Agency ("TEA"), which has complete authority to oversee and enforce the Book Ban. Compl. ¶ 12. TEA is required to collect all ratings of library materials submitted by booksellers, post those ratings "in a conspicuous place" on TEA's website, and review booksellers' ratings. TEX. EDUC. CODE §§ 35.002(c)-(e), 35.003(a). TEA must also post the names of booksellers that fail to rate books in accordance with TEA's revised rating on its website. § 35.003(c). Booksellers that appear on TEA's list are barred from doing business with public schools. § 35.003(d).

Defendant Martha Wong is sued in her official capacity as chair of the Texas State Library and Archives Commission's ("TSLAC") governing board. Compl. ¶ 13. Keven Ellis is sued in his official capacity as the chair of the Texas Board of Education ("BOE"). *Id*. ¶ 14. Together, TSLAC and the BOE are responsible for formulating and promulgating mandatory library standards for public schools. § 33.021(b). These mandatory standards constrain Plaintiffs from selling constitutionally protected materials to these schools.

Finally, Plaintiffs' First Amendment injuries will be redressed if the Book Ban is enjoined because they will no longer need to review and rate any books, can resume selling books to public schools, and will not have to agree to compelled speech against their will. *See Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

---

[14] Rather, Defendants have been publicly supportive of the bill. *See* Jay Janner, *Texas Gov. Abbott signs into law bill that prohibits sexually explicit material in schools*, AUSTIN AMERICAN-STATESMAN, June 12, 2023.

### 2. Plaintiffs' claims are ripe.

Determining whether a claim is ripe for judicial review requires the evaluation of (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 286 (5th Cir. 2012). A claim is "fit for judicial decision" if it presents a pure legal question requiring no further factual development. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586-87 (5th Cir. 1987). No factual development is required to find that the Book Ban is unconstitutional. Additionally, Plaintiffs will suffer significant hardship if the court withholds consideration at this time. As noted above, Plaintiffs will be unable to sell library materials to public schools when the statute takes effect in a matter of days. Such a "direct effect" on Plaintiffs' "day-to-day business" is a significant hardship sufficient to make a claim ripe for review. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 152 (1967).

### 3. Defendants are not entitled to sovereign immunity.

Any claims of sovereign immunity are overcome under *Ex parte Young*, 209 U.S. 123 (1908), which applies when a suit "seeks prospective, injunctive relief from a state actor, in [his] official capacity, based on an alleged ongoing violation of the federal constitution." *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013). Determining whether *Ex parte Young* provides an exception to sovereign immunity is a "'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002). Here, Plaintiffs seek only injunctive relief and have sued Defendants in their official capacity based on

ongoing constitutional violations.[15] Compl. ¶¶ 13-16. Thus, their claims fall squarely within the exception provided for in *Ex parte Young* and this action is not barred by sovereign immunity.[16]

### a. Defendants are tasked with enforcing HB 900.

The *Ex parte Young* analysis "turns on … whether 'the state officer, by virtue of his office, has some connection with the enforcement of the act.'" *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017). While enforcement requires "compulsion or constraint," it does not require civil or criminal prosecution. *Id.*[17] Defendants are integral to the enforcement of the Book Ban because TEA has "pervasive authority" to oversee and enforce a rating system that is premised on "compulsion" and "constraint"—compelling booksellers to issue and accept TEA's ratings—and constraining them from selling library materials to certain schools. Thus, Defendants have, at a minimum, "some connection with the enforcement of the act."

### b. Enforcement of the Book Ban is imminent.

For *Ex parte Young* to apply, there need only be a "scintilla of enforcement by the relevant state official." *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019). Neither an actual threat of enforcement nor imminent enforcement is required. *Air Evac*, 851 F.3d at 519. As noted by Defendants, "enforcement means compulsion or constraint." *See* Response 12. If the Book Ban

---

[15] The "ongoing" or "continuing" violation requirement "is satisfied when a state officer's enforcement of a policy allegedly in violation of federal law is threatened, even if the threat is not yet imminent." *Calhoun v. Collier*, No. W-20-CA-380-ADA, 2022 WL 2823580, at *4 (W.D. Tex. May 26, 2022) (Albright, J.).

[16] This Court has previously found that Defendant Mike Morath is subject to suit in his official capacity under the *Ex parte Young* doctrine. *Portee v. Morath*, No. 1:23-CV-551-RP, 2023 WL 4688528, at *5 (W.D. Tex. July 21, 2023).

[17] In *Air Evac EMS*, the Fifth Circuit allowed an action to proceed against state defendants based on their "pervasive authority to oversee and enforce" Texas's workers' compensation rate-reimbursement system. *Id*. at 519 ("state defendants obviously constrain Air Evac's ability to collect more than the maximum-reimbursement rate under the TWCA system").

takes effect on September 1, 2023, no bookseller can sell to a public school until it has submitted the required ratings to TEA. TEX. EDUC. CODE § 35.002(a). As such, the "compulsion" to issue ratings begins immediately upon the law taking effect or Plaintiffs will face a "constraint" on their First Amendment rights and their business. As such, enforcement is imminent, regardless of whether Defendants take affirmative steps on that date.

### c.   Injunctive relief would not control Defendants' discretion.

Defendants rely on inapposite case law to claim that enjoining the Book Ban would seek to "control an officer in the exercise of his [or her] discretion." Response at 13 (quoting *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 242 (5th Cir. 2020)). In *Richardson*, the plaintiffs sought to compel affirmative enforcement action by the Secretary of State. *Id*. In this case, Plaintiffs do not seek to control any discretionary action by Defendants. Instead, Plaintiffs seek only to enjoin Defendants from enforcing an unconstitutional law. Further, Defendants' obligations under HB 900 are not purely discretionary, nor does the statute say otherwise.

### B.   Plaintiffs state valid claims for relief.

#### 1.   Plaintiffs assert cognizable claims under 42 U.S.C. § 1983.

The U.S. Supreme Court has recognized that First Amendment claims may be brought under 42 U.S.C. § 1983. *See Wooley v. Maynard*, 430 U.S. 705, 710 (1977) (holding that "a litigant is entitled to resort to a federal forum in seeking redress under § 1983 for an alleged deprivation" of a First Amendment right").[18] Because Plaintiffs assert similar First Amendment claims in this case, they are cognizable under § 1983.

---

[18] In *Wooley*, the Supreme Court held that § 1983 bars state actors from compelling speech in violation of the First Amendment. *Id*. at 717.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION            8

### 2. Plaintiff booksellers, publishers, and authors have robust First Amendment rights to distribute books.

Defendants allege that Plaintiffs "have no First Amendment rights in this forum," in part, because they assert that the Book Ban concerns government speech and a school library is a nonpublic forum. *See* Response at 16-22. But these theories reflect a misunderstanding about Plaintiffs and the nature of their First Amendment claims. Plaintiffs are booksellers, publishers, and authors that are asserting their rights as private entities to distribute books and disseminate information to schools, which are fully protected under the First Amendment. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 n. 6 (1963) ("The constitutional guarantee of freedom of the press embraces the circulation of books."); *Smith v. People of the State of California*, 361 U.S. 147, 150 (1959) (the "free publication and dissemination of books and other forms of the printed word" is protected by the First Amendment). Outside of their overbreadth claim, Plaintiffs are not asserting the rights of students within the school setting.

The government speech doctrine does not apply because the Book Ban authorizes the removal of books, which is subject to the First Amendment. *See* TEX. EDUC. CODE 35.002(b); *Little v. Llano Cnty.*, No. 1:22-CV-424-RP, 2023 WL 2731089, at *7 (W.D. Tex. Mar. 30, 2023) (J., Pitman) (rejecting the argument "that removal decisions were 'government speech to which the First Amendment does not apply'"); *Fayetteville Pub. Library v. Crawford Cnty., Arkansas*, No. 5:23-CV-05086, 2023 WL 4845636, at *20 (W.D. Ark. July 29, 2023) (the censorship of non-obscene library materials is not government speech).

### C. Enjoining the Book Ban maintains the status quo.

In the Response, Defendants argue that the Motion should be denied to maintain the status quo. *See Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) ("The 'purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can

be held.'"). But this nonsensical argument should be rejected. In fact, allowing the Book Ban to take effect would have the opposite effect—radically upsetting the status quo. It would completely disrupt booksellers, publishers, and authors, who would be required to review and rate thousands of books; public schools, who must change the way they purchase books; and students, who will have restricted access to books in libraries. The status quo will only be maintained if the Book Ban is enjoined.

D. **The balance of equities and public interest favor injunctive relief.**

Courts have been clear: "Injunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life*, 697 F.3d at 298. Defendants do not attempt to contest this foundational legal principle in the Response. As explained in the Motion and above, enjoining the Book Ban would vindicate Plaintiffs' First Amendment rights. Thus, the balance of equities and public interest weigh heavily in favor of granting the Motion.

### III. CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Motion be granted, the Book Ban be enjoined from enforcement before September 1, 2023, and Plaintiffs be awarded all such relief to which they are entitled.

Respectfully submitted,

*/s/ Laura Lee Prather*
Laura Lee Prather
Texas Bar No. 16234200
laura.prather@haynesboone.com
Catherine L. Robb
Texas Bar No. 24007924
catherine.robb@haynesboone.com
Michael J. Lambert
Texas Bar No. 24128020
michael.lambert@haynesboone.com
Reid Pillifant
Texas Bar No. 24126157
reid.pillifant@haynesboone.com

**HAYNES AND BOONE, LLP**
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 17th day of August 2023, a true and correct copy of the above document was served via the CM/ECF system to all counsel of record.

*/s/ Laura Lee Prather*
Laura Lee Prather