**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **Book People, Inc., VBK, Inc., American Booksellers Association, Association of American Publishers, Authors Guild, Inc., Comic Book Legal Defense Fund** *Plaintiffs*, <br><br> **v.** <br><br> **Martha Wong, Keven Ellis, Mike Morath,** *Defendants.* | **Civil No. AU: 23-CV-00858-ADA** |

---

### Defendants' Reply in Support of Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)

---

Defendants Martha Wong, in her official capacity as Chair of the Texas State Library and Archives Commission ("TSLAC"), Keven Ellis, in his official capacity as Chair of the Texas State Board of Education ("SBOE"), and Mike Morath, in his official capacity as Commissioner of the Texas Education Agency ("the Agency") (collectively, "Defendants"), file this Reply in Support of Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Plaintiffs filed this suit, alleging that House Bill 900 ("READER") violates the First and Fourteenth Amendments, along with a Motion for Preliminary Injunction. ECF No. 1; ECF No. 6. A hearing was subsequently set for August 18, 2023. ECF No. 12. Defendants filed a Motion to Dismiss and Response in Opposition to Plaintiffs' Motion for Preliminary Injunction on August 16, 2023. ECF No. 19. At the hearing,

this Court requested to hear argument on jurisdictional issues raised by Defendants in their Motion to Dismiss before argument on the Motion for Preliminary Injunction. The Court set a hearing continuation date of August 28, 2023, to allow Plaintiffs time to respond to the Motion to Dismiss and to hear Plaintiffs' Motion for Preliminary Injunction. ECF No. 28. Plaintiffs filed their Response in Opposition to Defendants' Motion to Dismiss on August 24, 2023, ECF No. 29-1, to which Defendants now reply.

## ARGUMENT AND AUTHORITIES

### A.    This Court Lacks Subject-Matter Jurisdiction.

Plaintiffs begin with an assertion of standing under *Prison Legal News v. Livingston*, 683 F.3d 201, 212 (5th Cir. 2012). ECF No. 29-1 at 14. There, they selectively draw the Court's attention to a finding of standing to sue. *Id.* Plaintiffs fail to mention, however, *Livingston* is distinguishable because the forum in question was a prison—not a public school—and involved the rights of adult prisoners, not public-school children. *See generally*, *Livingston*, 683 F.3d 201. Even so, *Livingston* went on to hold that TDCJ's censorship policy as applied to the Plaintiff publishers did not violate the First Amendment, did not violate due process, and that the individual defendants were entitled to qualified immunity. *Id. Livingston*'s reasoning, if it applied here, would show that the alleged "right" concerns the mere ability to conduct commercial transactions for books with non-party school-library administrators, which is "not a 'relevant injury in fact.'" *Prison Legal News v. Livingston*, 683 F.3d 201, 212 (5th Cir. 2012).

Similarly, in *Bantam Books, Inc. v. Sullivan*, the law challenged was that which created the "Rhode Island Commission to Encourage Morality in Youth," a commission designed with the duty to "educate the public concerning any book, picture, pamphlet, ballad, printed paper or other thing containing obscene, indecent or impure language, or manifestly tending to the corruption of the youth…and to investigate and recommend the prosecution of all violations." *Bantam Books,* 372 U.S. 58, 59–60 (1963). But *Bantam Books* does not control the standing analysis because the general and wide sweeping regulations in that case are indisputably not analogous to READER, which merely concerns standards for books in public-school libraries. Unlike in *Bantam Books*, READER does not even arguably censor what books may be sold to children under 18, let alone threaten anyone with criminal prosecution. *See* 372 U.S. at 69–70.

Rather, as discussed in Defendants' Motion to Dismiss, precedent has long conferred wide authority in state and local officials for the creation and implementation of educational policy in public schools. Tex. Educ. Code §7.102; *Chiras v. Miller*, 432 F.3d 606, 608, 613 (5th Cir. 2005); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988); ECF No. 19 at 17. Plaintiffs lack standing, and their claims should be dismissed as a threshold matter on jurisdictional grounds.

1. **Plaintiffs lack standing for want of injury-in-fact, redressability, and ripeness.**

**a.** On injury-in-fact, Plaintiffs reiterate the speculative ways they could hypothetically be injured by the implementation of READER. *See generally*, ECF No. 1; ECF No. 29-1. Specifically, Plaintiffs allege they have already sustained injury

because Katy ISD stopped buying library books, "which has caused at least one Plaintiff to lose business." ECF No. 29-1 at 15. In support of said injury, Plaintiffs cite to a Houston Chronicle article entitled, "*Katy ISD halts all library book purchases, new books stored*," yet fail to identify who the mysterious injured Plaintiff is. *Id.*; *see also* ECF No. 1 at ¶36.

Plaintiffs then return to their misinterpretation of the statutory language in attempt to show injury is "imminent" and therefore satisfactory to confer standing. ECF No. 29-1 at 15-16. Read as a whole, sans parsing out only the subsections of the statute beneficial to their argument, Texas Education Code §35.002 clearly provides that a school book vendor may not sell to a school district without submitting the required ratings, and that ratings are not due until April 1, 2024. Tex. Educ. Code § 35.002(a)-(c). There is no prohibition to be had when the deadline with which one must comply has not yet passed.

Plaintiffs further allege they have no record of books previously sold, or way to know which books are in "active use," such that they are able to comply with the statutory requirements. ECF No. 29-1 at 16. As previously pointed out by Defendants, the statute does not mention any mechanism available for tracing previous sales back to Plaintiffs; Plaintiffs' conjectural fear that they may somehow be held responsible nevertheless, is a contrived injury, not an imminent one. Plaintiffs also allege that injury is imminent because they "do not understand how to apply the vague, overbroad, and subjective criteria in the statute for issuing the ratings." *Id.* In reality, no injury follows, let alone imminent injury, because there is no "punishment" set

forth in the statute for any "incorrectness" of the ratings submitted. *See generally*, Tex. Educ. Code Ch. 35. And plaintiffs entirely ignore that they may "petition the agency" if some dispute over the correctness of a book's rating ever materializes. *Id.* § 35.003(e). Thus, at a minimum, Plaintiffs cannot plead "imminent injury" via a "credible threat" that Defendants will seek to compel Plaintiffs' speech through corrected ratings. ECF No. 29-1 at 17. Aside from a lack of certainty as to whether the Agency will even review Plaintiffs' ratings or require them to be changed, the "speech" in question—both the ratings *which the Agency disseminates*, and the books determined to be appropriate for public schools—is that of the government, not Plaintiffs. ECF No. 19 at 26-29.

Notably, Plaintiffs do not assert a vested interest or property right in a sales contract with any school district, *see generally*, ECF No. 1, yet Plaintiffs plead as if they have some guarantee a school district will buy books from them. Principles of contracts law, albeit governed largely by state law, are instructive to this end. "[G]enerally someone who is not a party to an agreement has no interest in the terms of that contract." *El Paso Cmty. Partners v. B & G / Sunrise Joint Venture*, 24 S.W.3d 620, 626 (Tex. App.—Austin 2000, no pet.); *see also Imco Oil & Gas v. Mitchell Energy Corp.,* 911 S.W.2d 916, 920 (Tex.App.—Fort Worth 1995, no writ) (non-party had no right to enforce contract terms). Like the facts before us now, the bid process in *El Paso Cmty. Partners* was subject to statutory requirements. *Id*. Submission of book ratings is statutory consideration to be used by school districts to determine which vendors they may buy books from. Tex. Educ. Code § 35.003(d). Plaintiffs do not plead

any predetermined interest in the outcome. Moreover, because the law confers wide authority in state and local officials regarding policies concerning public education, the Legislature is well within its rights to use statutory compliance as a screening tool for the pool of bidders. Plaintiffs have every right to refuse to rate books and take their business elsewhere.

Instead, Plaintiffs now—for the first time—improperly attempt to assert a claim on behalf of third parties, including students. ECF No. 29-1 at 18. "[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129, (2004) (quoting *Warth v.* Seldin, 422 U.S. 490, 499 (1975)) (internal quotations omitted). To confer third party standing, a party must show, "a 'close' relationship with the person who possesses the right," *Id.* (citing *Powers v. Ohio,* 499 U.S. 400, 411 (1991) (internal quotations omitted), and that "there is a 'hindrance' to the possessor's ability to protect his own interests." *Id.* (citation omitted). Plaintiffs have made no effort to so plead, and cannot confer, third-party standing *ipse dixit*.

**b.** On redressability and ripeness, Plaintiffs also fail. A school district retains the discretion to choose its book vendors regardless of any ruling against the Defendants. There is no indication that any school district will "unequivocally" buy any book from any Plaintiff without READER. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019). And it is hard to take seriously Plaintiffs' assertion (ECF No. 29-1 at 22) that "[n]o further factual development is required," given that any hypothetical dispute over any book's rating cannot arise until after

layers of school and agency review which cannot even occur for several more months or years. *see* Tex. Educ. Code § 35.002(c) and ECF No. 19 at 2. Plaintiffs cite to several "non-committal" quotes made by Defense counsel at the hearing, including that Defendants "don't know" whether they will enforce READER, and that "eventually, there may be" enforcement. ECF No. 29-1 at 20-21. If anything, such statements emphasize that READER's provisions impose no "imminent" injury and cast doubt on of Plaintiffs' alleged injury altogether.

   **2. Plaintiffs' *Ex parte Young* arguments fail to defeat sovereign immunity.**

   Plaintiffs offer no serious response to the argument that Defendants enjoy sovereign immunity notwithstanding *Ex parte Young*. Plaintiffs' assertion of pervasive enforcement, citing *Air Evac EMS, Inc. v. TDI*, 851 F.3d 507, 519 (5th Cir. 2017), (ECF No. 29-1 at 24) is inapt because there is no arguable "prohibition" that works "in concert with" any Defendant-controlled "system" to enforce compliance. Instead, Plaintiffs improperly ask this Court to violate the Eleventh Amendment by purporting to control State officials in the exercise of their manifest discretion under READER regarding the setting of library collection standards, agency review of materials and vendors. *See* Tex. Educ. Code §§ 33.021(c), 35.003(c), 35.003(e).

**B.    Plaintiffs fail to state a claim upon which relief may be granted.**

   **1. A public-school library is a nonpublic forum.**

   The cases in Defendants' Motion to Dismiss demonstrate that a public-school library is a nonpublic forum. ECF No. 19 at 19-22. Plaintiffs cite a case addressing a *public* library, but not a ***public-school*** library. ECF No. 29-1 at 31. Like Plaintiffs'

attempt to analogize a prison to a public school, ECF No. 29-1 at 14, a public library is not analogous to a public-school library for forum purposes. Plaintiffs erroneously argue that the First Amendment rights of students rather than outside parties—such as Plaintiffs—somehow renders a different outcome. ECF No. 29-1 at 32. This fails because fora are properly analyzed under the general *use* of the property. *United States v. Kokinda*, 497 U.S. 720, 726 (1990) (citation omitted). Surely if the *Kuhlmeier* and *Bethel* Courts found student speech could be reasonably limited in public schools, they would also find that non-students' speech could be reasonably limited in public schools. *See generally, Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988); *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986).

### 2. The "speech" is government speech and non-compelled, and an "essential operation of the government" in any event.

Plaintiffs misunderstand government- and compelled-speech doctrine and whether READER concerns an essential operation of the government. ECF No. 19 at 24-27. As noted above, Plaintiffs mistake government speech for their speech by invoking First Amendment rights that do not belong to them. ECF No. 29-1 at 30. Nor can Plaintiffs claim READER is non-essential because it "was devised in 2023 and has yet to be implemented." ECF No. 29-1 at 36. Plaintiffs fail to grasp that it is *education* that is the essential operation of government because states have the "high responsibility for education of its citizens," which is the "very apex" of state functions. *Wisconsin v. Yoder*, 406 U.S. 205, 213 (1972). Thus, to the Agency, READER is "essential operation of the government," with no First Amendment implications.

### 3. Plaintiffs' vagueness, prior-restraint, facially invalidity, overbreadth, and nondelegation claims fail.

Plaintiffs implausibly allege that READER is vague. "A law is not void for vagueness unless it is impermissibly vague in all of its applications." *Vill of Hoffman Estates v. Flipside, Hoffman Estates Inc.*, 455 U.S. 489, 497 (1982). "Only a reasonable degree of certainty is required" for a statute to survive a vagueness challenge. *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 552–53 (5th Cir. 2008) (citation omitted). READER does not "fail[] to provide a 'person of ordinary intelligence a reasonable opportunity to know what is prohibited, so he may act accordingly.'" ECF No. 29-1 at 37. READER prohibits school districts from purchasing books from Plaintiffs only if they fail to submit a list, or if they fail to change a rating following an Agency review. Tex. Educ. Code §35.003. READER provides clear expectations of Plaintiffs: submit a list of book ratings to the Agency by April 1, 2024, and update the list every year by September 1. Tex. Educ. Code §35.002. If the Agency reviews a vendor's list and determines that a book should be alternatively rated, the vendor has 60 days to correct the rating. Tex. Educ. Code §35.003(b). That is not vague.

Plaintiffs insist that the rating system is vague because it leaves unanswered questions and the definitions of "sexually explicit" and "sexually relevant" might be unclear. ECF No. 29-1 at 38. But "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Minn. Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1891 (2018) (citation omitted). READER explicitly states the factors to be considered in rating the material; it states how to weigh and balance each factor, and to consider the full context of the material when

determining a rating. Texas Education Code § 35.0021. This undermines Plaintiffs' allegation that READER fails to "consider the work as whole and its literary, artistic, scientific, or political value." ECF No. 29-1 at 45.

Nor have Plaintiffs plausibly alleged prior-restraint, overbreadth, or nondelegation claims against READER. *Contra* ECF 29-1 at 40. These claims fail for the reasons explained in the Motion to Dismiss. ECF 19 at 29-33. Defendants would highlight that Plaintiffs persist in their misunderstanding of the relevant First Amendment rights of students arguably implicated in prior-restraint and overbreadth claims, and the level of First Amendment scrutiny (if any) that should be applied to READER. Plaintiffs' prior restraint claim fails because Defendants are not prohibiting communication of any kind; no book is forbidden from being published and no book sales are forbidden in any forum outside of Texas schools. Plaintiffs' overbreadth claim also fails because READER does not restrict or chill speech. It does nothing more than requires Plaintiffs to rate books, if they intend to sell books to Texas public schools. Plaintiffs also incorrectly contend that strict scrutiny applies, but even if the First Amendment applies, at most intermediate scrutiny is triggered because the "speech" in question is commercial speech. Moreover, given Plaintiffs' allegations of total agency control, discussed *supra*, Plaintiffs cannot plausibly allege that READER is unconstitutional delegation to private parties.

## PRAYER

For the foregoing reasons, the Defendants respectfully request that this Court grant Defendant's Motion to Dismiss in its entirety.

Respectfully submitted.

**ANGELA COLMENERO**
Provisional Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**JAMES LLOYD**
Acting Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Deputy Chief, General Litigation Division

**RYAN KERCHER**
Deputy Chief, General Litigation Division

*/s/ Christina Cella*
**CHRISTINA CELLA**
Assistant Attorney General
Texas State Bar No. 24106199
Telephone: (512) 475-2952
Facsimile: (512) 320-0667
Christina.Cella@oag.texas.gov

**AMY PLETSCHER**
Assistant Attorney General
Texas State Bar No. 24113663
Telephone: (512) 936-0927
Facsimile: (512) 320-0667
Amy.Pletscher@oag.texas.gov

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2023, a true and correct copy of the foregoing document was served on all counsels of record.

_/s/ Christina Cella_

CHRISTINA CELLA
Assistant Attorney General
Texas State Bar No. 24106199