```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF TEXAS
                           WACO DIVISION

BOOK PEOPLE, INC., ET AL *
                         *          September 11, 2023
VS.                      *
                         * CIVIL ACTION NO. 1:23-CV-858
MARTHA WONG, ET AL       *

            BEFORE THE HONORABLE ALAN D ALBRIGHT
                  MOTIONS HEARING (via Zoom)

APPEARANCES:

For the Plaintiff:    Laura Lee Prather, Esq.
                      Michael Joseph Lambert, Esq.
                      William Reid Pillifant, Esq.
                      Haynes and Boone, LLP
                      600 Congress Ave., Suite 1300
                      Austin, TX 78701

For the Defendant:    Christina Cella, Esq.
                      Amy Elizabeth Pletscher, Esq.
                      Office of the Attorney General
                        of Texas
                      PO Box 12548
                      Capitol Station
                      Austin, TX 78701

Court Reporter:       Kristie M. Davis, CRR, RMR
                      PO Box 20994
                      Waco, Texas 76702-0994
                      (254) 340-6114


   Proceedings recorded by mechanical stenography,

transcript produced by computer-aided transcription.
```

```
03:00   1                        (Hearing begins.)
03:00   2                        DEPUTY CLERK:  A civil action in Case
03:00   3    1:23-CV-858, Book People, Inc., et al., versus Martha
03:00   4    Wong, et al.  Case called for a motions hearing.
03:00   5                        THE COURT:  Ms. Prather, announcements
03:01   6    from counsel?
03:01   7                        MS. PRATHER:  Good afternoon, Your Honor.
03:01   8    Laura Prather here along with Michael Lambert and Reid
03:01   9    Pillifant on behalf of the plaintiffs.
03:01  10                        THE COURT:  Welcome.
03:01  11                        MS. CELLA:  Good afternoon, Your Honor.
03:01  12    Christina Cella and Amy Pletscher on behalf of the
03:01  13    defendants.  And a few of my clients are on the call as
03:01  14    well.
03:01  15                        THE COURT:  Well, welcome to them as
03:01  16    well.
03:01  17                        I'm not sure which of you to start with
03:01  18    today, but I think I'll probably start with you,
03:01  19    Ms. Cella, because the purpose of today's hearing is to
03:01  20    deal with your concerns that what I did orally -- and
03:01  21    we're going to get the order in this week, so that's
03:01  22    going to be -- that part of it will be taken care of --
03:01  23    but the -- your concern about the breadth of the
03:01  24    injunction.
03:01  25                        And so why don't you give me an idea, on
```

```
03:01   1    the record, of what you believe should be excluded from
03:02   2    the order assuming it's consistent with the idea that I
03:02   3    don't believe that it is constitutional for the State
03:02   4    to be imposing the burdens that they are on the
03:02   5    plaintiffs and third parties.
03:02   6                   But if there are -- I don't mean to be
03:02   7    (inaudible) when I say "bureaucratic."  If there are
03:02   8    things that are -- that need to be done by the TEA or
03:02   9    by some state agency that don't impose a burden on the
03:02  10    plaintiffs, that's really what I'm hoping you can set
03:02  11    out for me so I can -- I definitely want to tailor the
03:02  12    injunction in a way to only have it apply to protect
03:02  13    the plaintiffs.
03:02  14                   But of course, I'll hear their point of
03:02  15    view after you chat.
03:02  16                   MS. CELLA:  Thank you, Your Honor.
03:02  17                   Yes.  So as you're aware, we don't think
03:02  18    any of it should be enjoined.  But as it pertains only
03:02  19    to the state agencies' portion, there are specific
03:03  20    timelines that the state agencies, mainly TSLAC on the
03:03  21    forefront and then the State Board of Education on the
03:03  22    back end of that, but TSLAC needs to consider standards
03:03  23    for a proposal standards and guidelines.
03:03  24                   Some of that relates to books being rated
03:03  25    as sexually explicit, but some of it just has to do
```

03:03  1    with overall standards.
03:03  2                And as you're, I'm sure, aware of the
03:03  3    administrative procedure, proposed rules need to be
03:03  4    published in the Texas Register, and then TSLAC needs
03:03  5    to propose these standards as well to the State Board
03:03  6    of Education.  And things just need to be approved on
03:03  7    the State end that don't entirely involve the
03:03  8    plaintiffs' rating of books.
03:03  9                THE COURT:  Well, let me amend -- let me
03:03  10   try and make sure I understand.  Again, the line I
03:03  11   see -- and I'll hear from Ms. Prather because I may not
03:04  12   have it completely right.
03:04  13               But the way I see the line is
03:04  14   administrative actions that you need to take -- that
03:04  15   the State needs to take that have no impact on the
03:04  16   plaintiffs, I'm probably -- I'm considering allowing
03:04  17   those to continue, you know, where the plaintiff can't
03:04  18   show any harm or potential prejudice.
03:04  19               And so can you -- as best you can, if you
03:04  20   identify specifically maybe from the statute itself.
03:04  21   And so what -- if you could help me out by telling me
03:04  22   exactly what it is that you want me not to enjoin and
03:04  23   that way Ms. Prather can tell me what she thinks about
03:04  24   that.
03:04  25               MS. CELLA:  Do you want the specific

5

03:04  1   section numbers, or how do you want me to go through?
03:05  2               THE COURT:  I think that'd be the best
03:05  3   way so there's no -- if you tell me the specific
03:05  4   section numbers, then we can identify those in the
03:05  5   order either -- I guess maybe the injunction does not
03:05  6   cover this type of thing or whatever.
03:05  7               And also, that'll help Ms. Prather
03:05  8   identify specifically what she needs to respond to
03:05  9   about why, in her opinion, if she has an opinion, they
03:05  10  would be included in the injunction.
03:05  11              MS. CELLA:  Okay.  So I don't have -- you
03:05  12  know, I have the bill in front of me and I know what it
03:05  13  says.  I don't have the specific section numbers off
03:05  14  the top of my head that would pertain to my clients.  I
03:05  15  can either send that to you after this in a quick --
03:05  16              THE COURT:  Okay.  Let's do this then.
03:05  17  Why don't you run through with as much specificity as
03:05  18  you can the -- I always say buckets -- the specific
03:05  19  State action -- the specific procedures you would like
03:05  20  the State to be allowed to continue to take because, in
03:06  21  your opinion, they don't prejudice the plaintiff by me
03:06  22  allowing you to continue doing.
03:06  23              And then I think it -- then I'm perfectly
03:06  24  fine with you sending Ms. Prather and the Court a list
03:06  25  of specifically which sections those are identified in.

6

03:06  1                MS. CELLA:  Sure.
03:06  2                So it is mainly the -- and again, I don't
03:06  3   want to keep harping on this, but we don't think any of
03:06  4   it should be enjoined.
03:06  5                But the portions that pertain
03:06  6   specifically to the State are the guidelines that TSLAC
03:06  7   needs to develop and then the State Board of Education
03:06  8   needs to approve or not approve.  But those come up for
03:06  9   vote by the State Board, but TSLAC does develop them.
03:06  10  And I don't think that that would prejudice the
03:06  11  plaintiffs in any way.
03:06  12               THE COURT:  Ms. Prather, do you have a
03:06  13  response to that?
03:06  14               MS. PRATHER:  Yes, Your Honor.  I do.
03:06  15               We actually believe very strongly that
03:07  16  the bill in its entirety needs to be enjoined.  And
03:07  17  really, there's three reasons for that.
03:07  18               We sought the injunction of HB 900 in its
03:07  19  entirety because the unconstitutional definitions that
03:07  20  have been discussed at the prior hearings permeate the
03:07  21  statute.  And in fact, the very beginning of the
03:07  22  library standards section, which is the section that
03:07  23  opposing counsel is focusing on not being stayed, is
03:07  24  the definition of sexually explicit material.  That's
03:07  25  in 33.021(a).

```
03:07   1            And that right there is one of the big
03:07   2   discussion points that we've had about the
03:07   3   unconstitutionally vague and overbroad definitions.
03:07   4            We also -- and I'll go into more detail,
03:07   5   but three basic things.
03:07   6            One, these unconstitutional definitions
03:07   7   permeate the statute.
03:08   8            Two, all of HB 900 is linked such that a
03:08   9   partial injunction would actually invade the
03:08  10   legislative process.
03:08  11            Here, the legislature did not include a
03:08  12   severability provision.  They do that all the time.
03:08  13   They did it in more than 500 bills this session they
03:08  14   didn't hear, which then implies that there should be no
03:08  15   severability.
03:08  16            And, third, because the preliminary
03:08  17   injunction, the purpose is to maintain the status quo,
03:08  18   there already are library standards on the books.
03:08  19   Those library standards have been in place for decades.
03:08  20   They were most recently amended five years ago, and
03:08  21   those library standards can continue to be used while
03:08  22   this case is apparently going to be taken up to the
03:08  23   Fifth Circuit.
03:08  24            Now, I would like to go into a little
03:08  25   more detail on each of those points if it's okay, Your
```

8

03:08  1   Honor?
03:09  2               THE COURT:  Yes, please.
03:09  3               MS. PRATHER:  So as I said, we sought in
03:09  4   our pleadings a stay in its entirety.  We did that with
03:09  5   the pleadings and we did that with the selection of the
03:09  6   defendants.
03:09  7               As you saw, we included as a defendant
03:09  8   the TSLAC commissioner and the Texas Board of Education
03:09  9   chair in part because of their role in developing the
03:09  10  library standards.
03:09  11              In addition, under this bill, the
03:09  12  development of those library standards, the library
03:09  13  collection development, under 33.021 are mandatory.
03:09  14  Those are mandatory provisions that they would be
03:09  15  issuing now while you'd have a preliminary injunction
03:09  16  in place requiring school districts to adhere.
03:09  17              So 33.021(a) has that constitutionally
03:09  18  infirm definition of sexually explicit; 33.021(b) says
03:10  19  that:  The standards that are going to be developed by
03:10  20  TSLAC are mandatory; (c) says requires that the school
03:10  21  districts shall adhere to these standards; and (d) sets
03:10  22  forth what must be included in these standards.  And in
03:10  23  what must be included in these standards are the
03:10  24  constitutionally infirm issues.
03:10  25              And so by allowing them to go forward

```
03:10   1    with the standards, you're basically eviscerating the
03:10   2    preliminary injunction that you would be putting in
03:10   3    place.
03:10   4              The standards would immediately impact
03:10   5    the possession of books in the library.  So it's not
03:10   6    just ratings.  It talks about, under this policy, it
03:10   7    would prohibit the possession.  So you'd have books
03:10   8    taken off the shelf, existing books taken off the
03:10   9    shelves.  It would -- prohibits possession,
03:11  10    acquisition, and purchase.
03:11  11              So it directly impacts our clients and it
03:11  12    directly impacts the First Amendment protections that
03:11  13    they are protecting not just for themselves but for
03:11  14    students to have access to information.
03:11  15              This is not dealing with curriculum.
03:11  16    This is dealing with library collection standards, and
03:11  17    those collection standards have to have constitutional
03:11  18    protections in place.  That is what the U.S. Supreme
03:11  19    Court has said.
03:11  20              When you look again at that sexually
03:11  21    explicit definition which appears at the very beginning
03:11  22    of the library standards section, that definition is in
03:11  23    the statute more than ten different times.  It
03:11  24    permeates the entire statute.
03:11  25              And if you impose these library
```

03:11  1    standards -- which by the way, I think I heard at the
03:11  2    prior hearings nothing needs to be done until
03:11  3    April 1st.  These libraries standards have already been
03:12  4    drafted.  The day of our last hearing, the committee
03:12  5    that is considering these standards was looking at a
03:12  6    draft of these standards two hours before our hearing.
03:12  7                So don't think this hasn't already been
03:12  8    done.  It has already been done, and it's just not been
03:12  9    mentioned to the Court.
03:12  10               But the imposition of these standards,
03:12  11   once they are imposed, is going to function as an
03:12  12   unconstitutional prior restraint because you will end
03:12  13   up having books removed from public school libraries
03:12  14   based upon these standards without any form of judicial
03:12  15   review.
03:12  16               And that, Your Honor, under the Bantam
03:12  17   Books case is something that is unconstitutional.  It
03:12  18   falls short of the constitutional requirements for the
03:12  19   government regulation of obscenity because it reaches,
03:12  20   in this case, as we've already demonstrated,
03:12  21   constitutionally protected works.
03:13  22               That's the first reason not to allow a
03:13  23   partial preliminary injunction.
03:13  24               The second reason is because everything
03:13  25   is intertwined in this bill and that means that it's

03:13   1   not readily susceptible to any sort of partial
03:13   2   injunction.
03:13   3                As I mentioned, we end up having a
03:13   4   situation here where what is being asked of you is to
03:13   5   rewrite the law to try to conform it to constitutional
03:13   6   requirements.  And that is actually an invasion of the
03:13   7   legislative process.  Under U.S. versus Stevens, that
03:13   8   is not permissible.
03:13   9                There is a provision in here that I want
03:13   10  to flag as well for the Court that is not in the
03:13   11  library standards section that is sort of a "one man
03:13   12  trumps all" provision.
03:13   13               If you look at Section 35.007, in that
03:13   14  provision, it allows the TEA commissioner to adopt
03:14   15  rules as necessary to administer the chapter.  It's a
03:14   16  very broad right that it allows the TEA commissioner to
03:14   17  have.
03:14   18               So, again, if the Court just enjoins part
03:14   19  of the statute, it would open the door for the
03:14   20  commissioner to basically circumvent the injunction
03:14   21  through 35.007, which would defeat the purpose of
03:14   22  enjoining the law to begin with.
03:14   23               The failure to include a severability
03:14   24  clause by the legislature, this is not an oversight.
03:14   25  This was an intentional choice.

03:14   1           As I mentioned, 579 bills introduced last
03:14   2   session have severability provisions, including bills
03:14   3   by these same House and Senate sponsors.  They chose
03:14   4   not to do that here.
03:14   5           And under Carter versus Carter Coal, a
03:14   6   U.S. Supreme Court decision, that lack of severability
03:15   7   clause actually suggests the inseverability of the
03:15   8   provisions.  That omission, in and of itself, suggests
03:15   9   that the provisions are not severable.
03:15   10          Finally, the third point that I'd like to
03:15   11  bring up is the purpose behind a preliminary injunction
03:15   12  to begin with, and that is to maintain the status quo.
03:15   13          Because we already have standards and
03:15   14  guidelines in place -- got them right here, they're
03:15   15  big, thick guidelines that have been in place since
03:15   16  2018, they were originally developed back in 1997 -- it
03:15   17  is not as though there would be no standards for the
03:15   18  libraries to follow.  In fact, there are existing
03:15   19  standards.
03:15   20          The problem is if you only partially
03:15   21  enjoin, then you're going to end up with a situation
03:15   22  where constitutionally infirm definitions and processes
03:15   23  that allow for no judicial review, unconstitutional
03:16   24  prior restraints will go into effect.  And that will
03:16   25  create a tremendous environment of uncertainty for

```
03:16   1    people moving forward.
03:16   2                    The libraries won't know what to do.
03:16   3    They won't know what to buy.  They won't know what to
03:16   4    return.  They won't have any guidance.  And that, in
03:16   5    and of itself, will then chill the First Amendment
03:16   6    freedoms of the students, of the booksellers, and of
03:16   7    anyone who's trying to access information through
03:16   8    public school libraries.
03:16   9                    What we see here is, you know, this is an
03:16   10   unconstitutional law.  It's unconstitutional, all four
03:16   11   corners of it, and there is no right to enforce an
03:16   12   unconstitutional law.
03:16   13                   If the Court were to allow TSLAC and
03:16   14   others to go forward and develop these regulations
03:16   15   based on unconstitutional definitions and
03:16   16   unconstitutional procedures, then that would be like
03:17   17   wielding the sword of Damocles over booksellers and
03:17   18   students alike because those standards fall prey to the
03:17   19   same constitutional impairments of prior restraint,
03:17   20   vagueness, and overbreadth that we've already talked
03:17   21   about in the prior proceedings.
03:17   22                   So we urge the Court to enter an
03:17   23   injunction of HB 900 in its entirety and don't see how
03:17   24   it can be parsed.
03:17   25                   THE COURT:  A response?
```

03:17   1          MS. CELLA:  Yes.  Thank you, Your Honor.
03:17   2   A few things.
03:17   3          Ms. Prather indicated that there are
03:17   4   already standards in place, and that is true.  Prior to
03:17   5   this bill even coming out.  That is true.  So the State
03:17   6   does have the ability to amend standards even if this
03:17   7   bill had not ever come out.  So the fact that there are
03:17   8   already standards in place does go towards that.
03:17   9          Another item that Ms. Prather mentioned
03:17   10  was that these are already done and developed.  That's
03:17   11  not accurate, and it's not based on any facts.
03:18   12         TSLAC did write a draft.  It was nothing
03:18   13  final.  They were set to officially propose those
03:18   14  standards on September the 7th.  After the hearing last
03:18   15  week, that was immediately stopped and they have not
03:18   16  been proposed.  So to say that it's already done is --
03:18   17  it's just flat out incorrect.
03:18   18         And finally, I think, and most
03:18   19  importantly, the harm that plaintiffs are claiming
03:18   20  would occur if this was enjoined in its entirety are
03:18   21  not any harm to the plaintiff.
03:18   22         So the school districts were mentioned.
03:18   23  The students were mentioned.  But there's no standing
03:18   24  for Ms. Prather and the -- on behalf of the plaintiffs
03:18   25  to advocate for the school districts or the students.

```
03:18   1    We've been through that.
03:18   2                And enjoining this partially is not --
03:18   3    there's just not going to be any harm to the
03:18   4    plaintiffs.
03:18   5                And I apologize.  I accidentally left my
03:18   6    video off, which it is back on now.
03:19   7                THE COURT:  I think you were done, but
03:19   8    I'm not sure.  Are you done?
03:19   9                MS. CELLA:  I was.  Yes.
03:19   10               THE COURT:  Ms. Prather, anything else?
03:19   11               MS. PRATHER:  Just briefly, Your Honor.
03:19   12               There is certainly standing for the
03:19   13   booksellers and the plaintiffs in this case to bring
03:19   14   this argument concerning the library standards.
03:19   15               As I mentioned, this library standards
03:19   16   deal with the prohibition of possessing books,
03:19   17   possessing books that my clients have provided to
03:19   18   libraries, it's also dealing with the acquisition and
03:19   19   purchase of books that my clients would be selling to
03:19   20   the libraries.
03:19   21               In addition, as we've previously
03:19   22   mentioned, under Virginia versus American Booksellers
03:19   23   and other cases, my clients do have the right and have
03:19   24   brought this action, in addition, on behalf of those
03:19   25   third parties whose right to receive information will
```

```
                                                                    16
03:19    1    be violated, and that certainly would be impacted by
03:19    2    the imposition of these library standards at this time.
03:20    3                   THE COURT:  I'll be back in just a
03:20    4    second.
03:20    5                   (Pause in proceedings.)
03:23    6                   THE COURT:  Okay.  If we could go back on
03:23    7    the record.
03:23    8                   Is there anything else either counsel
03:23    9    would like to raise before -- we'll include in our
03:23   10    order what we're going to do.  Is there -- and that
03:23   11    will be out this week.
03:23   12                   Is there anything else we should include
03:23   13    in the order?
03:23   14                   MS. CELLA:  No, Your Honor.
03:23   15                   THE COURT:  You want us to include in the
03:23   16    order.
03:23   17                   MS. CELLA:  No, Your Honor.
03:23   18                   THE COURT:  Ms. Prather?
03:23   19                   MS. PRATHER:  No, Your Honor.
03:23   20                   THE COURT:  Thank you all for being here.
03:23   21    Have a good day.
03:23   22                   (Hearing adjourned.)
         23
         24
         25
```

```
                                                                  17
 1   UNITED STATES DISTRICT COURT )
 2   WESTERN DISTRICT OF TEXAS    )
 3
 4
 5              I, Kristie M. Davis, Official Court
 6   Reporter for the United States District Court, Western
 7   District of Texas, do certify that the foregoing is a
 8   correct transcript from the record of proceedings in
 9   the above-entitled matter.
10              I certify that the transcript fees and
11   format comply with those prescribed by the Court and
12   Judicial Conference of the United States.
13              Certified to by me this ^ day of
14   September 2023.
15
                              /s/ Kristie M. Davis
16                            KRISTIE M. DAVIS
                              Official Court Reporter
17                            800 Franklin Avenue
                              Waco, Texas 76701
18                            (254) 340-6114
                              kmdaviscsr@yahoo.com oh
19
20
21
22
23
24
25
```