# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| BOOK PEOPLE, INC., VBK, INC. d/b/a BLUE WILLOW BOOKSHOP, AMERICAN BOOKSELLERS ASSOCIATION, ASSOCIATION OF AMERICAN PUBLISHERS, AUTHORS GUILD, INC., COMIC BOOK LEGAL DEFENSE FUND, | § § § § § § § | |
| **Plaintiffs,** | § § | |
| v. | § § | CASE NO. 1:23-CV-00858-ADA |
| MARTHA WONG in her official capacity as chair of the Texas State Library and Archives Commission, KEVEN ELLIS in his official capacity as chair of the Texas Board of Education, MIKE MORATH in his official capacity as Commissioner of Education, | § § § § § § § § | |
| **Defendants.** | § | |

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS PENDING APPEAL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

I. INTRODUCTION AND SUMMARY OF ARGUMENT ......................................... 1

II. ARGUMENT ...................................................................................................... 2

    A.    The Motion for Stay should be denied because enjoining the enforcement of the Book Ban maintains the status quo and all four *Nken* factors favor Plaintiffs. ........................... 2

        1.    Denying the Motion for Stay maintains the status quo. ........................................ 3

        2.    All four *Nken* factors favor denying the Motion for Stay. ................................... 6

            a.    Defendants have not shown they are likely to succeed on the merits. ........ 6

            b.    Defendants will not be irreparably injured without a stay. ........................ 6

            c.    A stay of the preliminary injunction would substantially injure Plaintiffs. ............................................................................................... 8

            d.    The public interest supports enjoining an unconstitutional law. .............. 10

    B.    The entire Book Ban, including the Library Standards, should be enjoined. ................. 10

        1.    The Library Standards should be enjoined because they are interconnected with the rest of the Book Ban, are unconstitutional, and will cause imminent injury to Plaintiffs and third parties. ................................................................. 11

            a.    Plaintiffs have standing to challenge the Library Standards. ................... 12

            b.    The Library Standards are unconstitutional. .......................................... 13

        2.    An injunction enjoining the Library Standards would not be overbroad and any attempt to issue a partial injunction would be a "serious invasion of the legislative domain." ........................................................................................ 15

III. CONCLUSION ................................................................................................. 18

CERTIFICATE OF SERVICE .................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page(s)**

*303 Creative LLC v. Elenis*,
   143 S. Ct. 2298 (2023)..................................................................................................9

*All. for Hippocratic Med. v. U.S. Food & Drug Admin.*,
   78 F.4th 210 (5th Cir. 2023) ...............................................................................8, 10, 13

*Arnold v. Barbers Hill Indep. Sch. Dist.*,
   479 F. Supp. 3d 511 (S.D. Tex. 2020) ........................................................................9

*Ashcroft v. Am. Civil Liberties Union*,
   542 U.S. 656 (2004)......................................................................................................4

*Ass'n of Tex. Prof'l Educators v. Kirby*,
   788 S.W.2d 827 (Tex. 1990).......................................................................................17

*Austin Div. Dep't of Tex. v. Tex. Lottery Comm'n*,
   No. A-10-CA-465-SS, 2010 WL 11597747 (W.D. Tex. Dec. 14, 2010)
   (Sparks, J.) ..............................................................................................................3, 7

*Ayotte v. Planned Parenthood of N. New England*,
   546 U.S. 320 (2006)....................................................................................................16

*Bantam Books, Inc. v. Sullivan*,
   372 U.S. 58, 66 (1963)................................................................................................15

*Barber v. Bryant*,
   833 F.3d 510 (5th Cir. 2016) ...............................................................................2, 3, 5

*Benisek v. Lamone*,
   138 S. Ct. 1942 (2018)..................................................................................................3

*Califano v. Yamasaki*,
   442 U.S. 682 (1979)....................................................................................................15

*Campbell v. St. Tammany Parish School Bd*,
   64 F.3d 184 (5th Cir. 2018) .......................................................................................14

*Carter v. Carter Coal Co.*,
   298 U.S. 238 (1936)....................................................................................................17

*Catholic Leadership Coal. of Tex. v. Reisman*,
   764 F.3d 409 (5th Cir. 2014) .....................................................................................16

*Chiu v. Plano Indep. Sch. Dist.*,
   339 F.3d 273 (5th Cir. 2003) .....................................................................................15

*DeLeon v. Perry,*
    975 F. Supp. 2d 632 (W.D. Tex. 2014)................................................................7

*E.T. v. Paxton,*
    19 F.4th 760 (5th Cir. 2021) ..................................................................8, 15

*Elrod v. Burns,*
    427 U.S. 347 (1976)...............................................................................8, 9

*Ingebretsen on Behalf of Ingebretsen v. Jackson Pub. Sch. Dist.,*
    88 F.3d 274 (5th Cir. 1996) ..................................................................10

*Louisiana v. Becerra,*
    20 F.4th 260 (5th Cir. 2021) .................................................................5

*Martin v. City of Struthers,*
    319 U.S. 141 (1943).............................................................................13

*McDonald v. Longley,*
    4 F.4th 229 (5th Cir. 2021) ..................................................................8

*Miller v. California,*
    413 U.S. 15 (1973)...............................................................................14

*NetChoice, LLC v. Paxton,*
    142 S. Ct. 1715–16 (2022)....................................................................3

*Nken v. Holder,*
    556 U.S. 418 (2009).............................................................................2, 6

*Opulent Life Church v. City of Holly Springs, Miss.,*
    697 F.3d 279 (5th Cir. 2012) ................................................................10

*Ostrewich v. Tatum,*
    72 F.4th 94, 100 (5th Cir. 2023) ...........................................................6

*Pico v. Board of Education,*
    457 U.S. 853 (1982).............................................................................14

*Prison Legal News v. Livingston,*
    683 F.3d 201 (5th Cir. 2012) ................................................................13

*Scott v. Schedler,*
    826 F.3d 207 (5th Cir. 2016) ................................................................15

*Smith v. People of the State of California,*
    361 U.S. 147 (1959).............................................................................9

*State v. Biden*,
No. 23-30445, 2023 WL 5821788 (5th Cir. Sept. 8, 2023) ...................9

*Texans for Free Enter. v. Tex. Ethics Comm'n*,
732 F.3d 535 (5th Cir. 2013) ...................10

*Texas v. United States*,
40 F.4th 205 (5th Cir. 2022) ...................2

*Texas v. United States*,
787 F.3d 733 (5th Cir. 2015) ...................3, 5, 17

*United States v. Stevens*,
559 U.S. 460 (2010) ...................16

*United States v. Tex.*,
566 F. Supp. 3d 605 (W.D. Tex. 2021) ...................16

*Virginia v. American Booksellers Ass'n*,
484 U.S. 383 (1988) ...................12, 16

*Vote.org v. Callanen*,
39 F.4th 297, 308 (5th Cir. 2022) ...................7

*W. Virginia State Bd. of Educ. v. Barnette*,
319 U.S. 624 (1943) ...................7

*Whole Woman's Health v. Hellerstedt*,
579 U.S. 582, 136 S.Ct. 2292 (2016) ...................16

*Wisconsin v. Yoder*,
406 U.S. 205 (1972) ...................8

**Statutes**

Tex. Penal Code § 43.24 ...................12

Tex. Educ. Code § 33.021 ...................1, 5, 11, 12

Tex. Educ. Code § 33.021(a) ...................11, 14

Tex. Educ. Code § 33.021(c) ...................11, 12

Tex. Educ. Code §§ 33.021(c), 35.002(b)–(e), 35.003(a)–(c), ...................6

Tex. Educ. Code § 33.021(d)(2)(A) ...................6, 12, 13, 14

Tex. Educ. Code § 33.021(d)(2)(A)(ii) ...................11, 14

TEX. EDUC. CODE § 35.001(1) ...........................................................................17

TEX. EDUC. CODE § 35.002(a)..........................................................................4, 9

TEX. EDUC. CODE §35.002(c).............................................................................7

TEXAS GOV'T CODE § 312.013(b)......................................................................16

**Other Authorities**

Claire Goodman, *Katy ISD halts all library book purchases, new books stored*,
    HOUSTON CHRONICLE (June 27, 2023) ....................................................13

Plaintiffs Book People, Inc. ("BookPeople"), VBK, Inc. d/b/a Blue Willow Bookshop ("Blue Willow Bookshop"), American Booksellers Association ("ABA"), Association of American Publishers ("AAP"), Authors Guild, Inc. ("Guild"), and Comic Book Legal Defense Fund ("CBLDF") (collectively, "Plaintiffs") file this Response in Opposition to Defendants' Motion for Stay of Proceedings Pending Appeal ("Response").

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

During a remote Status Conference on August 31, 2023 (Dkt. 36), the Court granted Plaintiffs' Motion for Preliminary Injunction (Dkt. 6) and denied Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. 19). The Court also denied Defendants' oral request to stay the preliminary injunction pending appeal and stated that an Order enjoining the *entire* Book Ban would be forthcoming (Dkt. 36).

The next day, on September 1, 2023, Defendants filed a Motion for Stay of Proceedings Pending Appeal in "an abundance of caution" ("Motion for Stay," "Motion," or "Mot.") (Dkt. 37), requesting a stay of the preliminary injunction or, at a minimum, a stay of any portion that enjoined the "library-collection standards," Tex. Educ. Code § 33.021 ("Library Standards"). In the Motion, Defendants repeat the same arguments already rejected by the Court and ask the Court to narrow an injunction that has not yet been issued in a formal Order. Although Defendants' request for a stay has been denied, Plaintiffs submit this Response to reiterate that the Book Ban should be enjoined *in its entirety*, including the Library Standards, and that the Court correctly denied the stay request. Plaintiffs are likely to succeed in proving that the Book Ban violates the First and Fourteenth Amendments of the U.S. Constitution, enforcement of the Book Ban will cause them irreparable injury, and enjoining an unconstitutional law serves the public interest. Finally, but no

less importantly, an injunction preventing the enactment and enforcement of the Book Ban maintains the status quo.

## II.   ARGUMENT

**A.    The Motion for Stay should be denied because enjoining the enforcement of the Book Ban maintains the status quo and all four *Nken* factors favor Plaintiffs.**

A stay pending appeal is "an extraordinary remedy." *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022) (internal quotation omitted). A stay is "an intrusion into the ordinary processes of administration and judicial review" and "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotations omitted). Defendants, as the parties requesting a stay, "bear the burden of showing that the circumstances justify" a stay. *Id.* at 433–34. In determining whether to stay a preliminary injunction pending appeal, federal courts consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties; and (4) where the public interest lies.

*Id.* at 434 (the "*Nken* factors"). The first two factors are "most critical." *Id.* at 435. The "maintenance of the status quo" is also an "important consideration in granting a stay." *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quoting *Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358, 1359 (1978)).

Defendants fail to show that *any* of the four *Nken* factors favors a stay. Given the factual record in this case, which is supported by well-established constitutional law, Defendants cannot show a strong likelihood of success. As Plaintiffs have demonstrated, this Court has subject-matter jurisdiction over this case, and the Book Ban violates the First and Fourteenth Amendments to the

U.S. Constitution in at least one of six ways.[1] And Defendants will suffer "little to no harm" by not being able to enforce an unconstitutional law. *See Austin Div. Dep't of Tex. v. Tex. Lottery Comm'n*, No. A-10-CA-465-SS, 2010 WL 11597747, at *2 (W.D. Tex. Dec. 14, 2010) (Sparks, J.). By contrast, allowing the Book Ban to take effect would irreparably injure the constitutional rights of Plaintiffs and third parties and harm the public interest. Further, staying the preliminary injunction would upend the status quo, which would be maintained by enjoining the enforcement of a novel and unprecedented unconstitutional law before it takes effect. *See Barber*, 833 F.3d at 511.

Because all four *Nken* factors favor Plaintiffs and a preliminary injunction would maintain the status quo, the Motion for Stay should be denied.

### 1.     Denying the Motion for Stay maintains the status quo.

The Motion for Stay should be denied because a preliminary injunction preventing the enforcement of the Book Ban maintains the status quo.[2] *See Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) ("The 'purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.'"). By enjoining the Book Ban, the policies present prior to its enactment will remain in place until its constitutionality is decided. *Texas v. United States*, 787 F.3d 733, 768 (5th Cir. 2015) (an injunction "maintains the status quo while the court considers the issue"); *see also NetChoice, LLC v. Paxton*, 142 S. Ct. 1715–16 (2022) (vacating a stay that upset the status quo).

---

[1] *See* Motion for Preliminary Injunction at 7–19 (Dkt. 6); Plaintiffs' Reply in Support of their Motion for Preliminary Injunction at 2-9 ("Reply") (Dkt. 25), Response at 3–40 (Dkt. 6).
[2] Besides a brief conclusory statement, Defendants fail to explain why or how granting the Motion for Stay would maintain the status quo. Mot. at 3.

Texas has gone hundreds of years without the Book Ban. There is no compelling need for a newly enacted law to suddenly take effect on an interim basis while this Court considers the merits. On the other hand, staying the preliminary injunction would radically upend the status quo. Most notably, as explained throughout this litigation, Plaintiffs' free speech rights would be infringed. *See Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 671 (2004) (explaining the numerous "reasons to let the injunction stand pending a full trial on the merits," including risk of self-censorship and the "potential for extraordinary harm and a serious chill upon protected speech").

Many other practical changes would occur as well. Plaintiffs and other booksellers would be immediately barred from selling books to public schools because they would be unable to comply with the burdensome task of reviewing and rating every book ever sold to a public school because, among other reasons, they lack those records and do not have the resources to implement such a system. *See* TEX. EDUC. CODE § 35.002(a); Motion for Preliminary Injunction at 6–7 (Dkt. 6); Response to Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) at 5–7 ("Response to Motion to Dismiss") (Dkt. 30). Plaintiffs and other booksellers, publishers, and authors would be forced to undergo the painstaking process of reviewing and rating thousands of books before the ban would be lifted. *Id*. Reviewing and rating these books would significantly disturb Plaintiffs' business and cause economic injury, the re-allocation of many resources, and the potential closure of independent booksellers throughout the state. *Id*.; *see also* Dkt. 1–2 ¶ 16; Dkt. 1–3 ¶ 14-16; Dkt. 1–4 ¶ 20. If a stay is allowed and the Book Ban takes effect, public schools, who must change the way they store and purchase books, and students, who will have diminished options and restricted access to books in school libraries, would also be dramatically affected. Under the status quo as it existed before the anticipated

enactment of the Book Ban and as it exists today, *none* of these onerous requirements or conditions are present—and Plaintiffs' constitutional rights remain unscathed. Thus, the status quo is maintained by barring the Book Ban from taking effect.

Enjoining the Book Ban would also preserve the status quo of the Library Standards. The pre-existing library standards, which were enacted in 1995 and updated in 2018, would remain in effect. *See* TEX. EDUC. CODE § 33.021; *School Library Programs: Standards and Guidelines for Texas*. While Defendants would be prevented from developing and enacting the *new* Library Standards, maintaining the current 2018 Library Standards would preserve the status quo as it existed prior to the Book Ban's passage—and as it has existed for the past five years.

Stay requests have been denied in similar cases where a newly enacted statute is challenged and a court issues a preliminary injunction preventing the law from going into effect. *See, e.g., Barber*, 833 F.3d at 511–12 (denying motion to stay because a preliminary injunction enjoining the enactment and enforcement of a Mississippi law "maintain[ed] the status quo in Mississippi as it existed before the Legislature's passage and attempted enactment of [the law]"); *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (denying motion to stay because a preliminary injunction barring enforcement of a federal mandate before it went into effect maintained the status quo); *Tex. v. United States*, 787 F.3d 733, 768 (5th Cir. 2015) (denying motion to stay because a preliminary injunction that prevented the implementation of a law "maintain[ed] the status quo while the court considers the issue").

Here, because the preliminary injunction maintains the status quo as it existed before the Texas Legislature passed the Book Ban, the Motion for Stay should similarly be denied.

## 2. All four *Nken* factors favor denying the Motion for Stay.

### a. Defendants have not shown they are likely to succeed on the merits.

Defendants cannot show that they are likely to succeed on the merits. In fact, by granting the Motion for Preliminary Injunction, the Court has already found that Plaintiffs, not Defendants, are likely to succeed on the merits. *See* Dkt. 36. In the Motion for Stay, Defendants repeat boilerplate arguments from prior filings, adding nothing new that should cause the Court to reconsider its prior, and well-reasoned, decisions.[3] Mot. at 4–6.

By contrast, Plaintiffs have shown they are likely to succeed on the merits because they have standing, Defendants are not entitled to sovereign immunity, and the Book Ban violates the First and Fourteenth Amendments to the U.S. Constitution. *See* Motion for Preliminary Injunction at 7–20 (Dkt. 6); Response to Motion to Dismiss at 3–40 (Dkt. 30). Because the Court has already found that Plaintiffs are likely to succeed on the merits, the first *Nken* factor, one of the two "most critical" factors, strongly favors Plaintiffs. *Nken*, 556 U.S. at 435.

### b. Defendants will not be irreparably injured without a stay.

The second *Nken* factor also favors Plaintiffs because Defendants will not be irreparably injured without a stay of an unconstitutional law. Defendants' argument that the preliminary injunction should be stayed because the Book Ban "requires *immediate* action from several state entities" is disingenuous at best. Mot. at 6–7. Although Defendants claim they need time to "devise" Library Standards, proposed Library Standards have already been drafted and were

---

[3] *Ostrewich v. Tatum* is distinguishable for many reasons. 72 F.4th 94, 100 (5th Cir. 2023); Mot. at 4. First, the enforcement of the law at issue was discretionary, while the Book Ban contains many mandatory provisions. *See, e.g.,* TEX. EDUC. CODE § 33.021(c), 35.002(b)–(e), 35.003(a)–(c), Book Ban §§ 4–5. Second, the Library Standards are not guidelines but are mandatory restraints on the possession, acquisition, and purchasing of book for all Texas school districts. *Id.* § 33.021(d)(2)(A).

considered before the TEA Committee on Instruction two hours *before* the August 31, 2023 hearing (Dkt. 32). *See* [August-September 2023 Committee on Instruction](#) ("This item provides the opportunity for the committee to discuss a draft of the proposed collection development standards and provide feedback to TSLAC."). During the meeting, Defendant Keven Ellis announced that TSLAC had submitted proposed Library Standards weeks earlier on August 8, 2023.

Defendants conveniently now insist that "significant *present* action" to implement the Book Ban is required. Mot. at 7. Yet during the August 18, 2023 hearing (Dkt. 27), Defendants professed that "nothing would happen until" the April 1, 2024 deadline for vendors to submit their ratings to TEA (§35.002(c)). *See* Response to Motion Dismiss, Exhibit A, Transcript of Hearing at 2:24–3:1; 65:21–23 ("Nothing -- nothing is going to happen until April 1st").

Regardless of timing, Defendants will suffer "little to no harm" by being prevented from enforcing an unconstitutional law. *Austin Div. Dep't of Tex.*, 2010 WL 11597747, at \*2 ("[C]ertainly the harm [the State] suffers does not outweigh the injury to the person whose constitutional rights are violated."). Defendants' allegation that States "generally suffer a form of automatic irreparable injury" when a statute is enjoined does not apply here when the Court has found that Plaintiffs are likely to succeed on their claims that the statute is unconstitutional.[4] Indeed, this Court has rejected a similar argument, explaining that federal constitutional rights "may not depend on the outcome of state legislation or a state constitution." *DeLeon v. Perry*, 975 F. Supp. 2d 632, 657 (W.D. Tex. 2014). In other words, state officials, such as Defendants, are not "beyond reach of the Constitution." *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638

---

[4] *Vote.org v. Callanen* in inapposite because the Court found that the plaintiffs likely did not have standing and the State had a strong likelihood of success on the merits. 39 F.4th 297, 308 (5th Cir. 2022). By granting the Motion for Preliminary Injunction, this Court has found the opposite—that Plaintiffs have both standing and a strong likelihood of success on the merits. *See* Dkt. 36.

(1943) ("The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts."); *see also Elrod v. Burns*, 427 U.S. 347, 356 (1976). The inability to enforce an unconstitutional law is "really no harm at all." *McDonald v. Longley*, 4 F.4th 229, 255 (5th Cir. 2021) (internal quotations omitted); *see also All. for Hippocratic Med.*, 78 F.4th at 251 (neither the government nor the public "has any interest in enforcing a regulation that violates federal law").

The fact that a preliminary injunction will maintain the status quo, as explained above, further supports the conclusion that a stay will not irreparably harm Defendants. *See E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021) ("[I]n considering whether issuance of a stay pending appeal will substantially injure the other party, the maintenance of the status quo is an important consideration in granting a stay.") (internal quotations omitted). Because Defendants have not met their burden that they would be irreparably injured without a stay,[5] the second *Nken* factor favors Plaintiffs.

      **c.**    **A stay of the preliminary injunction would substantially injure Plaintiffs.**

The third *Nken* factor also favors Plaintiffs because a stay of the preliminary injunction would allow the Book Ban to take effect, which would substantially injure Plaintiffs. As explained in previous court filings, the Book Ban will cause Plaintiffs multiple forms of irreparable harm, including deprivations of First Amendment rights (a paradigmatic irreparable harm) and

---

[5] Even if the State has "high responsibility for education of its citizens" (Mot. at 7), the imposition of any education regulations must be "reasonable." *Wisconsin v. Yoder*, 406 U.S. 205, 213 (1972) Not only is the Book Ban unreasonable, but it is patently unconstitutional and does not survive strict scrutiny, much less rational basis review. *See* Motion for Preliminary Injunction at 15–17 (Dkt. 6).

unrecoverable compliance costs and burdens.[6] In a very real way, a stay could put independent booksellers out of business. *See* Dkt. 1–2 ¶ 16; Dkt. 1–3 ¶ 14-16; Dkt. 1–4 ¶ 20.

The Book Ban infringes Plaintiffs' First and Fourteenth Amendments rights to distribute and sell books and be free from compelled speech. *See Smith v. People of the State of California*, 361 U.S. 147, 150 (1959) (the "free publication and dissemination of books and other forms of the printed word" is protected by the First Amendment); *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2308 (2023) ("[T]he government may not compel a person to speak its own preferred messages.").[7] Courts have uniformly held that these violations of constitutional rights constitute an irreparable injury. *See, e.g.*, *Elrod*, 427 U.S. at 373 ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *State v. Biden*, No. 23-30445, 2023 WL 5821788, at *8 (5th Cir. Sept. 8, 2023) ("chilling" the exercise of First Amendment rights "is, itself, a constitutionally sufficient injury"); *Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F. Supp. 3d 511, 529 (S.D. Tex. 2020) ("It has repeatedly been recognized by the federal courts at all levels that violation of constitutional rights constitutes irreparable harm as a matter of law.").

Although constitutional injuries alone justify denying the stay request, injuries to Plaintiffs are exacerbated because the Book Ban will also cause Plaintiffs extreme economic harm. If the Book Ban takes effect, Plaintiffs will be prevented from selling books to public schools and required to undergo the onerous—and costly—task of reviewing and rating *every* book they have ever sold to public schools in an effort to comply with the law. *See* Tex. Educ. Code § 35.002(a) (a bookseller "*may not sell* library materials" to a public school "*unless*" it has "issued appropriate

---

[6] *See* Compl. ¶¶ 60, 77, 85–86, 91–92, 98–100; Motion for Preliminary Injunction at 7–10, 19–20 (Dkt. 6); Reply 2–5 (Dkt. 25); Response to Motion to Dismiss 3–12 (Dkt. 30).
[7] Allowing the enforcement of the Book Ban would also cause significant irreparable economic injury. *See* Response to Motion to Dismiss 6–7 (Dkt. 30); Dkt. 1-2 ¶¶ 22, 26; Dkt. 1-3 ¶ 25; Dkt. 1-4 ¶ 19; Dkt. 1-5 ¶ 16; Dkt. 1-6 ¶ 11.

ratings regarding sexually explicitly material and sexually relevant material *previously sold to a district or school*") (emphasis added); Motion for Preliminary Injunction at 6–7 (Dkt. 6); Response to Motion to Dismiss at 5–7 (Dkt. 30). This will dramatically disturb Plaintiffs' business and require them to divert extensive resources and valuable time from their normal operations, which will cause economic injury. *See* Dkt. 1-5 ¶ 9 (complying with the Book Ban "would be cost-prohibitive, difficult and time-consuming"); Dkt. 1-3 ¶¶ 14–16 (it will cost between $200 and $1,000 per book and between $4 million and $500 million total to read and rate books already sold to public schools); *All. For Hippocratic Med.*, 78 F.4th at 236 (plaintiffs "sustain a concrete injury when they are forced to divert time and resources away from their regular" jobs).

Because a stay of the preliminary injunction would substantially injure Plaintiffs' constitutional and economic rights, the third *Nken* factor heavily favors Plaintiffs.

### d. The public interest supports enjoining an unconstitutional law.

The fourth and final *Nken* factor also strongly favors Plaintiffs because enjoining an unconstitutional law is "always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013); *see also Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012) ("[I]njunctions protecting First Amendment freedoms are always in the public interest."); *Ingebretsen on Behalf of Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) ("[T]he public interest was not disserved by an injunction preventing [the] implementation" of an unconstitutional law).

## B. __The entire Book Ban, including the Library Standards, should be enjoined.__

Defendants argue that, even if the preliminary injunction is not stayed in its entirety, this Court should at least stay any portion enjoining the Library Standards. As discussed below, this argument fails, too.

1.  **The Library Standards should be enjoined because they are interconnected with the rest of the Book Ban, are unconstitutional, and will cause imminent injury to Plaintiffs and third parties.**

Defendants' argument that the injunction should not include the Library Standards found at § 33.021 (Mot. at 2)[8] should be rejected because that section includes (and mandates adoption of) foundational definitions and provisions that are inextricably intertwined with the rest of the law and are critical to the law's functionality. Further, like other provisions in the Book Ban, § 33.021 is unconstitutional and its implementation would directly injure Plaintiffs and related third parties.

To start, § 33.021(a) leads with the unconstitutionally vague and overbroad definition of "sexually explicit material," a term that permeates the law and is referenced 10 additional times, including sections directly affecting booksellers. Section 33.021 continues by mandating the adoption of this definition in the Library Standards. *See* § 33.021(d)(2)(A)(ii). The definition of "sexually explicit material" has already been established to run afoul of the U.S. Constitution (1) for vagueness, (2) as a content-based regulation not narrowly tailored to a compelling government interest, and (3) for overbreadth because it restricts and chills a substantial amount of protected speech (beyond obscenity) and does not distinguish among the ages of students. *See* Motion for Preliminary Injunction at 11–12, 15–18 (Dkt. 6); Response to Motion to Dismiss at 5–7 (Dkt. 30).

The rest of § 33.021 is similarly unconstitutional. Section 33.021(c) requires the Texas State Library and Archives Commission ("TSLAC") and State Board of Education ("SBOE") to "adopt standards for school library collection development that a school district **shall adhere to** in developing or implementing the district's library collection development policies" ("Library

---

[8] Tellingly, during a remote hearing on the scope of the preliminary injunction on September 11, 2023 (Dkt. 38), Defendants could not articulate what specific sections of the Book Ban should not be enjoined.

Standards"). The Library Standards "must include a collection development policy that prohibits the <u>possession</u>, <u>acquisition</u>, and <u>purchase of</u>:

> (i) <u>harmful material</u>, as defined by Section 43.24, Penal Code;
>
> (ii) library material rated <u>sexually explicit material</u> by the selling library material vendor; or
>
> (iii) library material that is <u>pervasively vulgar</u> or <u>educationally unsuitable</u> as referenced in *Pico v. Board of Education*, 457 U.S. 853 (1982)."

TEX. EDUC. CODE § 33.021(d)(2)(A) (emphasis added); Compl. ¶ 53. The collection development policy "is <u>required</u> for all library materials available for use or display, including material contained in school libraries, classroom libraries, and online catalogs." *Id.* § 33.021(d)(2)(C).

### a. Plaintiffs have standing to challenge the Library Standards.

Plaintiffs, who specifically pled that the entire Book Ban, including § 33.021, should be enjoined,[9] have standing to challenge § 33.021 because the Library Standards violate their First and Fourteenth Amendment rights and those of third parties,[10] including other booksellers, publishers, authors, and students, and will cause imminent economic harm. The Library Standards, which are mandatory, bar public schools from the "possession, acquisition, and purchase of" books from Plaintiffs deemed to contain "harmful material," "sexually explicit material," or to be

---

[9] Plaintiffs requested a preliminary and permanent injunction enjoining Defendants from "enforcing the Book Ban *in any manner* whatsoever," and asked the Court to "enter a declaratory judgment that the Book Ban is unconstitutional, void, and of no effect." Compl. §§ VIII.b., c. (emphasis added); *see also* Compl. ¶¶ 52–54 (explaining the Library Standards). Further, Plaintiffs specifically sued Defendant Martha Wong in her official capacity as Chair of TSLAC and Defendant Keven Ellis in his official capacity as Chair of SBOE because of their roles in developing the Library Standards. Compl. ¶¶ 13–14; TEX. EDUC. CODE § 33.021(c).

[10] *See Virginia v. American Booksellers Ass'n,,* 484 U.S. 383, 392–93 (1988) ("[I]n the First Amendment context, '[l]itigants ... are permitted to challenge a statute . . . because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'").

"pervasively vulgar or educationally unsuitable."[11] Tᴇx. Eᴅᴜᴄ. Cᴏᴅᴇ § 33.021(d)(2)(A). These provisions infringe Plaintiffs' and third parties' rights to distribute and sell constitutionally protected works and receive information. *See Prison Legal News v. Livingston*, 683 F.3d 201, 212 (5th Cir. 2012) (the distribution of books "is precisely the type of interest at the core of First Amendment protections"); *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943) (the First Amendment "embraces the right to distribute literature, and necessarily protects the right to receive it."); *see also* Response to Motion to Dismiss at 8–9 (Dkt. 30) (Plaintiffs have standing to challenge the Book Ban on behalf of students).

The uncertainty surrounding which books may be possessed, acquired, or purchased has caused[12]—and will continue to cause—school districts to stop purchasing books from Plaintiffs. *See* Reply at 5 (Dkt. 25) (explaining that Library Standards "constrain Plaintiffs and other booksellers from selling constitutionally protected materials" to public schools). The reduction of books purchased from Plaintiffs because of the Library Standards will economically harm Plaintiffs. *See All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 235 (5th Cir. 2023) ("[E]conomic harm—like damage to one's business interest—is a quintessential Article III injury."); *see also* Response to Motion to Dismiss at 5–7 (Dkt. 30) (the inability of public schools to buy books confers standing).

### b. The Library Standards are unconstitutional.

The Library Standards should be enjoined because they bar public schools from the "possession, acquisition, and purchase of" books deemed to contain "harmful material," "sexually

---

[11] *See also* Reply at 5 (Dkt. 25) (the "Library Standards" "constrain Plaintiffs and other booksellers from selling constitutionally protected materials" to public schools).
[12] *See* Claire Goodman, *Katy ISD halts all library book purchases, new books stored*, Hᴏᴜsᴛᴏɴ Cʜʀᴏɴɪᴄʟᴇ (June 27, 2023); Dkt. 1-3 ¶¶ 24–25 (Plaintiff Blue Willow has already lost sales because of the Book Ban).

explicit material," or that are "pervasively vulgar or educationally unsuitable," which requires the <u>removal</u> of books from school libraries, classroom libraries, and online catalogs. TEX. EDUC. CODE § 33.021(d)(2)(A)(ii). Such a regime would mandate the immediate removal of books prior to a determination of the constitutionality of the law. Because the definition of "sexually explicit material" does not mirror the obscenity test in *Miller v. California*, 413 U.S. 15, 24 (1973), constitutionally protected books would be banned from school library shelves, which would infringe students' right to receive information.[13] *See Pico*, 457 U.S. at 867–69 (a decision "to remove books" from shelves implicates the First Amendment; school libraries play a "unique role" as a place of voluntary inquiry where students "must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding"); *Campbell v. St. Tammany Parish School Bd*, 64 F.3d 184, 189–90 (5th Cir. 2018) (the "decision to remove [books] must withstand greater scrutiny within the context of the First Amendment than would a decision involving a curricular matter."). It would also prevent schools from "acquiring" those same constitutionally protected books from plaintiffs, causing immediate irreparable harm.

The Library Standards also violate the First and Fourteenth Amendments because they are based on unconstitutionally vague terms, such as "pervasively vulgar" or "educationally unsuitable" (in addition to "sexually explicit material"). TEX. EDUC. CODE § 33.021(d)(2)(A). These terms are not defined in the Book Ban, the Penal or Education Codes, nor in case law. Although the Book Ban cites to *Pico*, the Court there describes "educationally unsuitable" as a "standardless phrase." *Pico*, 457 U.S. at 890. The lack of clarity of these terms will sweep in constitutionally protected works and cause a chilling effect on school districts because they will

---

[13] The Book Ban, including the Library Standards, is subject to constitutional limitations because it does *not* involve the school curriculum. The Book Ban specifically excludes textbooks or similar books "directly related to the curriculum." TEX. EDUC. CODE §§ 33.021(a); 35.001(3).

not know which books they can—or cannot—purchase based on these unclear terms. *See* Response to Motion to Dismiss at 27–30 (Dkt. 30).

The Library Standards also function as an impermissible prior restraint because they provide the State, a non-judicial government body, the exclusive ability to classify books and determine which books are allowed in public schools. Like the Rhode Island Commission in *Bantam Books, Inc. v. Sullivan* that determined whether "objectionable" books could be sold, distributed, or displayed to minors, TSLAC and SBOE are vested with the unconstitutional authority to "prohibit[] the possession, acquisition, and purchase of" constitutionally protected materials. *See* 372 U.S. 58, 66 (1963) (allowing a non-judicial body to label publications as "objectionable" without a judicial determination is an unconstitutional "system of prior administrative restraints"); *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 280 (5th Cir. 2003) ("The prohibition of distributing literature is a classic form of a prior restraint."); *see also* Motion for Preliminary Injunction at 13–15 (Dkt. 6).

**2.      An injunction enjoining the Library Standards would not be overbroad and any attempt to issue a partial injunction would be a "serious invasion of the legislative domain."**

Defendants erroneously allege that enjoining the entire law would be "impermissibly overbroad."[14] Mot. at 4–5. But a narrow judicial remedy is not required when confronted with a facially unconstitutional law, such as the Book Ban. The scope of an injunction is "dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). As explained above and in other filings in this case, the entire Book Ban, including the Library Standards,

---

[14] The cases cited in support of this assertion (Mot. at 4) are not analogous. *See Scott v. Schedler*, 826 F.3d 207, 214 (5th Cir. 2016) (finding an injunction to be *vague*, not overbroad); *E.T. v. Paxton*, 19 F.4th 760, 769 (5th Cir. 2021) (finding that that Plaintiffs was unlikely to have standing or prevail on the merits).

violates the First and Fourteenth Amendment rights of Plaintiffs and third parties. *See, e.g.,* Compl. §§ VIII.b., c. Thus, the Court should enjoin the entire law and need not "comb through" the law "in piecemeal fashion." *United States v. Tex.,* 566 F. Supp. 3d 605 (W.D. Tex. 2021) (remaining provisions of a law were invalid because the main statutory provisions at issue were unconstitutional); *see also Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 136 S.Ct. 2292, 2319 (2016) (courts need not "proceed in piecemeal fashion when we have found the statutory provisions at issue facially unconstitutional"); *Virginia v. Am. Booksellers Ass'n, Inc*., 484 U.S. 383, 397 (1988) (courts need not "rewrite a state law to conform it to constitutional requirements."). Any provisions that may remain could be used to coerce vendors to comply with the unconstitutional law. For example, § 35.007, which allows the TEA commissioner to "adopt rules as necessary to administer" the Book Ban, could permit the State to circumvent a partial injunction.

Attempting to salvage pieces of an unconstitutional law and create a new one, as opposed to striking the statute in its entirety, would run afoul of the separation of powers. By re-writing the statute, the Court would be improperly engaging in "quintessentially legislative work." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006). Re-writing a law to "conform it to constitutional requirements" is a "serious invasion of the legislative domain." *United States v. Stevens*, 559 U.S. 460, 481 (2010); *see also Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 434 (5th Cir. 2014) ("It is not our job to determine the maximum possible imposition on speech that Texas may enact, and save Texas's statute by re-writing it contrary to its plain text so that it embodies the maximum constitutionally permissible limit on speech.").

Instead, the specific choices made while drafting, amending, and adopting the Book Ban should be respected, including whether any provisions are severable. *See* TEXAS GOV'T CODE

§ 312.013(b) (courts have the power to "ascertain and give effect to legislative intent concerning severability of a statute"). The Legislature could have, but tellingly *did not,* include a Severability Clause in the Book Ban. More than 575 bills with severability provisions were introduced this year during the regular session of the 88th Legislature. Yet the House and Senate sponsors of the Book Ban—who authored other bills with severability provisions—specifically omitted a Severability Clause from the Book Ban. A Severability Clause was not added by amendment, and the Legislature adopted the Book Ban without one. The absence of a Severability Clause creates the "presumption" that the Legislature intended for the law "to be effective as an entirety." *See Carter v. Carter Coal Co.*, 298 U.S. 238, 312 (1936) (when there is no Severability Clause, "if any provision be unconstitutional, the presumption is that the remaining provisions fall with it"). Further, neither the Library Standards nor any other provisions are "plainly severable and capable of execution." *See Ass'n of Tex. Prof'l Educators v. Kirby*, 788 S.W.2d 827, 831 (Tex. 1990).

Finally, Defendants' complaint that Plaintiffs request a "statewide preliminary injunction" (Mot. at 4–5) is meritless because the Book Ban, which applies to "any entity that sells library material to a public primary or secondary school in this state," affects every school district across Texas. TEX. EDUC. CODE § 35.001(1). Defendants fail to explain why a statewide injunction would be overbroad when the Fifth Circuit has permitted *nationwide* injunctions. For example, in *Texas. v. United States*, the Fifth Circuit denied a stay of a nationwide injunction because a partial injunction would "undermine" constitutional rights and be "ineffective" because those subject to the law are "free to move between states." 787 F.3d 733, 769 (5th Cir. 2015). Similarly, the Book Ban undermines constitutional rights and would be ineffective because school districts and booksellers subject to the law exist throughout the state. *Id*.

### III.  <u>CONCLUSION</u>

The Court should reject Defendants' eleventh-hour efforts to alter the Court's decision to enjoin the entire Book Ban and deny their request to stay the preliminary injunction. The Book Ban, including the Library Standards, violates Plaintiffs' First and Fourteenth Amendment rights and causes them irreparable harm. A preliminary injunction preventing the enactment and enforcement of an unconstitutional law is clearly in the public interest. And the status quo would be maintained by preventing the Book Ban from going into effect. For these reasons and those above, Plaintiffs respectfully request that the Court enjoin the entire Book Ban and deny the Motion for Stay.

Respectfully submitted,

_/s/ Laura Lee Prather_
Laura Lee Prather
Texas Bar No. 16234200
laura.prather@haynesboone.com
Catherine L. Robb
Texas Bar No. 24007924
catherine.robb@haynesboone.com
Michael J. Lambert
Texas Bar No. 24128020
michael.lambert@haynesboone.com
William Reid Pillifant
Texas Bar No. 24126157
reid.pillifant@haynesboone.com

**HAYNES AND BOONE, LLP**
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 15th day of September 2023, a true and correct copy of the above document was served via the CM/ECF system to all counsel of record.

*/s/ Laura Lee Prather*
Laura Lee Prather