## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **BOOK PEOPLE, INC., VBK, INC. d/b/a BLUE WILLOW BOOKSHOP, AMERICAN BOOKSELLERS ASSOCIATION, ASSOCIATION OF AMERICAN PUBLISHERS, AUTHORS GUILD, INC., COMIC BOOK LEGAL DEFENSE FUND,** | § § § § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **CASE NO. 23-CV-00858-ADA** |
| **MARTHA WONG in her official capacity as chair of the Texas State Library and Archives Commission, KEVEN ELLIS in his official capacity as chair of the Texas Board of Education, MIKE MORATH in his official capacity as Commissioner of Education,** | § § § § § § § § § | |
| **Defendants.** | § § | |

---

## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs Book People, Inc., VBK, Inc. d/b/a Blue Willow Bookshop, American Booksellers Association, Association of American Publishers, Authors Guild, Inc., and Comic Book Legal Defense Fund ("Plaintiffs") file this Notice of Supplemental Authority ("Notice") in support of their Motion for Summary Judgment (Dkt. 88) ("MSJ") and Response in Opposition to Defendant's Motion for Summary Judgment (Dkt. 90) ("Response") to advise the Court of a recent development in a case cited by Plaintiffs in their summary judgment briefing.

## I.    INTRODUCTION

In the MSJ and Response, Plaintiffs argue that Sections 33.021(a), 33.021(d)(2)(A)(ii), 35.001, 35.002, 35.0021, and 35.003 of HB 900 (the "Rating Requirements") violate the First and

Fourteenth Amendments to the U.S. Constitution and should be permanently enjoined because, among other reasons, they are overbroad, void for vagueness, and facially unconstitutional.[1] These issues arise in an analogous case cited by Plaintiffs in their MSJ and Response[2]—*Fayetteville Pub. Library v. Crawford Cnty., Arkansas*—whereby the Western District of Arkansas found that an Arkansas law signed less than three months before HB 900 regulating the distribution of books to minors was likely unconstitutional. 684 F. Supp. 3d 879, 906 (W.D. Ark. 2023) (preliminarily enjoining Sections 1 and 5 of Act 372).

Since summary judgment briefing concluded in this matter, the Western District of Arkansas permanently enjoined Sections 1 and 5 of Act 372. No. 5:23-CV-5086, 2024 WL 5202774 (W.D. Ark. Dec. 23, 2024) (attached as Exhibit A). This Notice is intended to inform this Court of the recent developments in *Fayetteville* and explain why it is relevant here. Although Act 372 is a criminal law and *Fayetteville* is not binding, the court's reasoning is instructive because of the novel nature of the issues in both cases and the constitutional defects shared by Act 372 and HB 900.

## II.    FACTUAL BACKGROUND

Section 1 of Act 372 imposes a penalty if an individual knowingly "[f]urnishes, presents, provides, makes available, gives, lends, shows, advertises, or distributes to a minor an item that is harmful to minors." *Id*. at *2. Section 1 relies on the definition of "harmful to minors" in Arkansas's obscenity statute, Ark. Code Ann. § 5-68-501(2), which does not distinguish between minors of different ages. *Id*. at *6.

Section 5 of Act 372 establishes guidelines for the selection, relocation, and retention of library materials. *Id*. at *11. Section 5 states that any "person affected by . . . material" in a library's

---

[1] Dkt. 88 at 11, 16–20, 22–28; Dkt. 90 at 24–25.
[2] Dkt. 88 at 16, 27–28; Dkt. 92 at 20.

collection may "challenge the appropriateness" of that material's inclusion in the main collection. *Id*. The law does not define "appropriateness." *Id*.

The plaintiffs in *Fayetteville*—a coalition of libraries, booksellers, and authors—argued that Sections 1 and 5 are overbroad, void for vagueness, and failed strict scrutiny as a matter of law.

## III.    ANALYSIS

### A.    Like Section 1 of Act 372, HB 900 is overbroad.

In *Fayetteville*, the court first held that Section 1 is overbroad[3] because, without distinguishing between minors of different ages, it "could be interpreted broadly to apply to a great number of works, including ones that would be acceptable for adults and older minors to view." *Id*. at *3. Although Section 1 may protect younger minors from accessing inappropriate sexual content in libraries, the law "will only achieve that end at the expense of everyone else's First Amendment rights." *Id*. at *9. Moreover, by restricting access to certain books, Section 1 "will powerfully stigmatize" restricted books and chill access to them. *Id*.

Like Section 1, HB 900 is overbroad because its rating protocol and interpretation of terms, including "sexually explicit material" and "sexually relevant material," do not distinguish between the ages of students/readers and will thus restrict older students' access to "vast amounts of reading material." *Id*. at *9; Dkt. 88 at 26–27. Additionally, HB 900, like Section 1, will stigmatize books

---

[3] Unlike HB 900, Section 1 tracks the definition of obscenity under *Miller/Ginsberg*, yet the court still found that Section 1 was unconstitutional because it "does not distinguish between minors of different ages and instead aggregates them into a single category: 'minors.'" *Id*. at *6. HB 900 not only fails to comport with *Miller/Ginsberg*, but it also requires uniform ratings for all students, regardless of age. Dkt. 88 at 3, 6, 17–18, 21. And while some terms of HB 900 may be lifted from portions of the Texas Penal Code, the Legislature passed over the definition of "obscenity," encroaching on an even broader swath of constitutionally protected work. Plucking portions of the child pornography statute are equally unavailing since that statute deals with visual rather than written medium, and the constitutional analysis focuses on the person *depicted* in the material, not the *recipient* of the material.

labeled "sexually explicit" or "sexually relevant" and chill access to them. *Id*. at *9; Dkt. 88 at 14, 29. Because HB 900 does not account for differences in ages, like the Arkansas law, it sweeps in materials that are constitutionally protected as to older minors and places unjustified burdens on their access.

**B.    Like Sections 1 and 5 of Act 372, HB 900 is void for vagueness.**

The court next held that Section 1 is void for vagueness because it "provides no clarity on what affirmative steps a bookseller or librarian must take to avoid a violation." *Id*. at *10. Librarians and booksellers are left "unsure about whether shelving books they know contain sexual content may subject them to criminal liability." *Id*. at *10. The court explained that "even if one could imagine 'some conduct that clearly falls within the provision's grasp,'" Section 1 is vague because its undefined terms permit "arbitrary and discriminatory enforcement." *Id*. at *6 (quoting *Johnson v. United States*, 576 U.S. 591, 602 (2015)). The court also held that Section 5 is void for vagueness because its "pivotal term"—"appropriateness"—is "susceptible to multiple interpretations" and "fails to provide meaningful guidance for those who enforce it." *Id*. at *14–15.

Similarly, HB 900 provides no clarity on how to interpret many of the crucial steps a bookseller must take to comply with the law. Like Section 1, HB 900 has many terms that are susceptible to multiple interpretations, including terms that are unique to the law ("sexually relevant material," "sexually explicit material," "directly related to the curriculum," "active use," and "contextual analysis"), that will lead to inconsistent application of the Rating Requirements. Dkt. 88 at 16–20. In *Fayetteville*, a judge testified that "appropriate" could mean "different things[s] for different people." *Id*. at *14. Here, TEA's representative and representatives of Plaintiffs testified extensively that HB 900's terms will be interpreted differently by different

people.[4] Dkt. 88 at 16–17; Dkt. 88-11, TEA Depo. 101:10–21, 133:15–134:3, 136:1–17, 150:25–152:25.

## C.    HB 900 is subject to strict scrutiny.

The court also held that Section 5 is a content-based restriction subject to strict scrutiny because "the content of the library material" must be considered during each step of determining the "appropriateness" of a book. *Fayetteville*, 2024 WL 5202774 at *15. Similarly, each of the 16 steps required to comply with HB 900 impermissibly require booksellers to consider the content of books. Dkt. 88 at 4–7, 23–24; Dkt. 88–4.

## D.    The government speech doctrine does not apply.

Finally, the court in *Fayetteville* held that Section 5 "implicates the First Amendment and does not qualify as protected government speech" because Section 5 burdens access to books and causes books to be removed due to their content. *Fayetteville*, 2024 WL 5202774 at *16 (citing *GLBT Youth in Iowa Schs. v. Reynolds*, 114 F.4th 660, 668 (8th Cir. 2024)). So, too, do the Rating Requirements restrict access to books and cause them to be removed from school libraries based

---

[4] For example, since summary judgment briefing concluded, Canyon Independent School District removed the Bible from school libraries only to later reverse its decision after "receiving clarification from Representative Patterson." *See* Cameron Abrams, *Canyon ISD Removes the Bible From School Libraries, Citing Law Targeting 'Sexually Explicit' Material*, THE TEXAN, December 19, 2024; Elizabeth Nolan Brown, *Bible Back in Texas Schools After Being Pulled for Sexual Content*, REASON, December 31, 2024. The initial decision to remove the Bible, a book with serious literary, artistic, political or scientific value for students of *all* ages, highlights the overbreadth of HB 900. Moreover, the confusion about whether the Bible is subject to HB 900 confirms the law's vagueness. Although HB 900's sponsor, Representative Jared Patterson, claims that "the Bible, and other religious texts, are protected under HB 900," there is no textual support for that statement. Further, a single lawmaker dictating the meaning of a law encroaches on the judicial branch's inherent power to interpret laws. *See Brent Edward Webster v. Comm'n for Lawyer Discipline*, No. 23-0694, 2024 WL 5249494 (Tex. Dec. 31, 2024) (the separation of powers doctrine "leads each branch to avoid stoking needless friction with the other coordinate branches of government"); *In re Tex. House of Representatives*, No. 24-0884, 2024 WL 4795397, at *3 (Tex. Nov. 15, 2024) ("it is emphatically the province and duty of the judicial department to say what the law is") (quoting *Marbury v. Madison,* 5 U.S. 137, 177 (1803)).

---

on their content. Dkt. 88 at 23–24; Dkt. 90 at 27–28.

## IV.    CONCLUSION

If the Legislature's purpose in passing HB 900 was "to protect younger minors from accessing inappropriate sexual content in libraries," it "will only achieve that end at the expense of everyone else's First Amendment rights." *Fayetteville*, 2024 WL 5202774 at *9. Like Act 372, HB 900 "deputizes" booksellers as "agents of censorship;" and when motivated by the fear of loss of contracts and sales, they will likely sell "only books fit for young children" and "discard the rest." *Id*.

Because of the factual and legal similarities between *Fayetteville* and this case, Plaintiffs respectfully request that this Court consider the reasoning of *Fayetteville* in ruling on their MSJ and Response.

Respectfully submitted,

*/s/ Laura Lee Prather*
Laura Lee Prather
Texas Bar No. 16234200
laura.prather@haynesboone.com
Catherine L. Robb
Texas Bar No. 24007924
catherine.robb@haynesboone.com
Michael J. Lambert
Texas Bar No. 24128020
michael.lambert@haynesboone.com
Reid Pillifant
Texas Bar No. 24126157
reid.pillifant@haynesboone.com

**HAYNES AND BOONE, LLP**
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 6th day of January 2025, a true and correct copy of

the above document was served via the CM/ECF system to all counsel of record.


*/s/ Laura Lee Prather*
Laura Lee Prather
