IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **BOOK PEOPLE, INC., VBK INC., AMERICAN BOOKSELLERS ASSOCIATION, ASSOCIATION OF AMERICAN PUBLISHERS AUTHORS GUILD INC., COMIC BOOK LEGAL DEFENSE FUND,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**MARTHA WONG** in her official capacity as chair of the **TEXAS STATE LIBRARY AND ARCHIVES COMMISSION, KEVEN ELLIS,** in his official capacity as chair of the **TEXAS BOARD OF EDUCATION, MIKE MORATH** in his official capacity as **COMMISSIONER OF EDUCATION,**<br><br>*Defendants.* | **CIVIL ACTION NO. 1:23-CV-00858-ADA** |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

### I.   INTRODUCTION

Defendant files this Response to Plaintiffs' Notice of Supplemental Authority (ECF No. 94), in which Plaintiffs argue that a nonbinding memorandum opinion issued by the United States District Court for the Western District of Arkansas in *Fayetteville Pub. Libr. v. Crawford Cnty.*, No. 5:23-CV-5086, 2024 WL 5202774 (W.D. Ark. Dec. 23, 2024), should inform this Court's analysis of HB900 and the relevant case law. The statute at issue in *Fayetteville* differs from HB900 to an extent that makes the case inapposite. Therefore, the *Fayetteville* court's reasoning should not inform the Court's analysis here.

1

## II. FACTUAL BACKGROUND

In *Fayetteville*, a group of plaintiffs challenged the constitutionality of Sections 1 and 5 of Arkansas Act 372. *Fayetteville Pub. Libr. v. Crawford Cnty.*, No. 5:23-CV-5086, 2024 WL 5202774, at *1 (W.D. Ark. Dec. 23, 2024). Section 1 of Arkansas Act 372 ("Act 372") creates the Class A misdemeanor offense of furnishing a harmful item to a minor and levies a criminal penalty of up to one year in jail on librarians, booksellers, and others who make harmful media available to individuals younger than eighteen years of age. *Id*. Section 5 of Arkansas Act 372 implements a new process for public libraries and local governments to follow when considering a citizen's request to move or remove a book or other library material from a public library's collection, based on the material's appropriateness. *Id*. Act 372 refers to the definitions of "minors" and "harmful to minors" contained within Arkansas's obscenity statute, incorporates the Supreme Court's approved definition of "obscenity," and does not define "appropriateness." *Id*. at *2. The district court enjoined the enforcement of the challenged sections of Act 372.

## III. ANALYSIS

### A. HB900 is a narrow regulation on the content of public school libraries, not a broad regulation of protected speech.

In *Fayetteville,* the district court applied the definition of "harmful to minors" described in Arkansas Supreme Court precedent, which broadly interpreted that term to mean "harmful to the youngest minors." *Id*. at *8. In holding Section 1 of Act 372 to be overbroad, the district court expressed concern that the only way for librarians and booksellers to comply with the law would be to keep those under the age of eighteen from entering their facilities or to keep them away from all books with sexual content by creating adults-only spaces in public libraries and bookstores. *Id*. at *9.

The court believed that creating segregated spaces for people aged eighteen and older in libraries and bookstores would chill adult access to certain protected speech. *Id*.

Unlike Act 372, HB900 applies only to libraries in public primary and secondary schools and open enrollment charter schools. It does not apply to public libraries open to the community at large or to bookstores. It is a narrow, viewpoint-neutral, age-appropriate constraint on the sexual content that may be included in public school libraries, whose patrons are children. The mission of a public school library is to further the educational purpose of the school and enhance the school curriculum. The Constitution allows some limitation of expression to advance public schools' educational goals. *See Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 272-73 (1988). The First Amendment does not require Texas to accept speech that weakens its vital mission of educating Texas children. *See id*.

**B. HB900 is not unconstitutionally vague.**

In *Fayetteville*, the district court held that Act 372 was void for vagueness because it did not provide adequate notice of what steps librarians and booksellers should take to avoid being subjected to criminal liability. *Fayetteville*, 2024 WL 5202774, at *10. Unlike Act 372, HB900 imposes no criminal penalties. Unlike Act 372, HB900 applies only to library material vendors, who have chosen to contract with Texas public primary and secondary schools to sell library materials. Furthermore, HB900 provides "sufficient definiteness" so that Plaintiffs and "ordinary people" have "a reasonably opportunity to know what conduct is prohibited." *Doe I v. Landry*, 90 F.3d 99, 116 (5th Cir. 2018).

First, HB900 clearly defines the terms "sexually relevant material" and "sexually explicit material." *See* Tex. Educ. Code § 35.001(2), (3). The definitions are further clarified by reference

3

to Section 43.25, Texas Penal Code, which defines sexual conduct, and Section 43.21(a)(4), Texas Penal Code, which defines patently offensive in a way that incorporates the Supreme Court-approved standard for obscenity. HB900 incorporates the definition of "curriculum" contained within the Texas Education Code, including subjects like "science," "health," and "English language arts." *See* Tex. Educ. Code § 28.002(a), 33.021(a). Although "active use" and "contextual analysis" are not defined by statute, the words are not legal terms of art and carry their ordinary meanings. *See Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952). Finally, HB900 lists factors for library material vendors to guide the vendors when performing a contextual analysis of library material. *See* Tex. Educ. Code § 33.021.

### C. HB900 should be subject to rational basis review.

Unlike Act 372, HB900 is a constitutional restriction on the sale of sexually explicit materials to public school libraries for distribution to children, which the First Amendment does not protect; therefore, rational basis review is warranted. HB900's regulation of materials included in public school library collections is reasonably related to Texas's interest in protecting children from accessing sexually explicit materials at school. *See Ginsberg v. New York*, 390 U.S. 629 (1968).

Unlike Act 372, HB900 does not regulate the material available in bookstores, public community libraries or any location other than public school libraries. Unlike Act 372, HB900 provides narrow, clear standards to prevent the expenditure of taxpayer funds on sexually explicit material intended for distribution to children enrolled in public schools. HB900 does not prevent library material vendors from selling sexually explicit material to the public at large or in bookstores. HB900 merely requires vendors to provide information about the sexual content of materials they wish to sell to public schools.

## IV. CONCLUSION

Because of the differences between HB900 and Act 372, this Court should not consider the district court's analysis in *Fayetteville* in ruling on the pending motions for summary judgment in this case.

Date: February 3, 2025

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Legal Strategy

Respectfully submitted.

*/s/ Ryan G. Kercher*
**RYAN G. KERCHER**
Deputy Division Chief
Special Litigation Division
Texas Bar No. 24060998

**MUNERA AL-FUHAID**
Special Counsel
Tex. State Bar No. 24094501

**ZACHARY BERG**
Special Counsel
Tex. State Bar No. 24107706

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Ryan.Kercher@oag.texas.gov
Munera.Al-Fuhaid@oag.texas.gov
Zachary.Berg@oag.texas.gov

**COUNSEL FOR DEFENDANT**

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on February 3, 2025, and that all counsel of record were served by CM/ECF.

*/s/Ryan G. Kercher*
RYAN G. KERCHER