**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **BOOK PEOPLE, INC., VBK, INC. d/b/a BLUE WILLOW BOOKSHOP, AMERICAN BOOKSELLERS ASSOCIATION, ASSOCIATION OF AMERICAN PUBLISHERS, AUTHORS GUILD, INC., COMIC BOOK LEGAL DEFENSE FUND,** | § § § § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **CASE NO. 23-CV-00858-ADA** |
| **MARTHA WONG in her official capacity as chair of the Texas State Library and Archives Commission, KEVEN ELLIS in his official capacity as chair of the Texas Board of Education, MIKE MORATH in his official capacity as Commissioner of Education,** | § § § § § § § § § | |
| **Defendants.** | § § | |

---

**PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**NOTICE OF SUPPLEMENTAL AUTHORITIES**

---

In a last-ditch effort to evade summary judgment, Defendant again attempts to mislead this Court by obfuscating the constitutional concerns raised by HB 900—a draconian law compelling booksellers to rate every book they've ever sold to Texas schools with inexhaustibly vague definitions that are unbounded by the confines of obscenity and have no differentiation for the age or maturity of the reader. Instead, Defendant unabashedly mischaracterizes as a "holding" the Fifth Circuit's plurality's discussion in *Little v. Llano County* about government speech, which has "no precedential weight" due to the court's "lack of a majority holding" and failure to reach consensus

on the issue.[1]  Defendant further notifies this Court of recent developments in *Free Speech Coal., Inc. v. Paxton ("FSC")*, trying to lead it astray on what standard to apply and failing to advise this Court that the Supreme Court reaffirmed the application of strict scrutiny to content-based restrictions of protected speech (like in HB 900). Moreover, the law at issue in *FSC* restricts material obscene, and therefore illegal, as to minors under *Miller/Ginsberg* and only "incidentally" burdens protected speech of adults; while HB 900 restricts material protected as to minors[2] without the critical safeguards of *Miller/Ginsberg* and *substantially* burdens protected speech of adults.

At bottom, neither *FSC* nor *Llano County* involve compelled speech, vagueness, or prior restraint—the reasons this Court first enjoined HB 900. Dkt. 43. Indeed, neither the Fifth Circuit in *Llano County* nor the U.S. Supreme Court in *FSC* cite to this Court's Order enjoining HB 900 or the Fifth Circuit's Opinion affirming the injunction, which (to date) has been cited favorably in 49 cases, only further demonstrating the inapposite nature of these cases.

Instead, Defendant chooses to stay mute on more recent, analogous cases showing that Plaintiffs have standing (an issue raised again on summary judgment despite the Fifth Circuit's prior ruling on the issue) and that permanent injunctions are the appropriate relief to prevent the enforcement of the Ratings Requirements in HB 900. The U.S. Supreme Court's standing analysis made clear this term that ongoing compliance costs and decreased revenues—like those Plaintiffs face because of HB 900—are "of course" an injury in fact. *Diamond Alternative Energy, LLC v. EPA*, 145 S.Ct. 2121, 2135 (2025). Moreover, because HB 900 prohibits Texas schools from

---

[1] This harkens back to defense counsel's misrepresentations to the Legislature about the placement of a book in a middle school library—when, in fact, the librarian ordered it for an adult/teacher's library—and their claim to have sought *en banc* review before the Fifth Circuit when no such filing was made by the State. *See* Dkt. 90 at 2, n.2.

[2] Even material that receives a "sexually explicit" or "sexually relevant" rating is not necessarily illegal as to minors because, among other reasons, there are no constitutional guardrails in place in the definitions.

buying books from booksellers, booksellers are the "object" of the law. *Id*. Thus, there is "little question" that HB 900 injures them and a judgment preventing the law from taking effect will redress their injury. *Id*. Further, the Fifth Circuit reiterated that the proper course of action when dealing with an unconstitutional law is to issue a permanent injunction, as requested here. *See Texas v. Yellen*, 105 F.4th 755 (5th Cir. 2024) (affirming permanent injunction enjoining the enforcement of an unconstitutional law).

## I.    <u>SUMMARY OF ARGUMENT</u>

The two cases raised by Defendant in its last-minute Notice have no impact on Plaintiffs' claims and the bases for enjoining the law as previously determined by this Court and the Fifth Circuit. The actual narrow holding in *Llano County*, which has been appealed to the U.S. Supreme Court,[3] is that individuals "cannot invoke a right to receive information to challenge a library's removal of books." 138 F.4th at 836. But Plaintiffs do not challenge a library's removal of books. Plaintiffs challenge HB 900's web of requirements and definitions as compelled speech, void for vagueness, an unconstitutional prior restraint, facially invalid, overbroad, and an unconstitutional delegation—none of which are at issue in *Llano County*. Although Plaintiffs argue that HB 900 is overbroad because it violates students' right to receive information, that basis is only one of *many* reasons why the law is unconstitutionally overbroad, as explained below. Moreover, the government speech portion of *Llano County* has no precedential value because it was not joined by a majority of the *en banc* court (and was previously rejected by the Fifth Circuit in this case). *Id*. at 851-865. In any event, HB 900 requires *private* booksellers to issue book ratings and adopt the government's ratings *as their own* – textbook compelled speech.

*FSC* is also distinct because the entire decision is predicated on the material at issue being

---

[3] The plaintiffs filed a Petition for Writ of Certiorari on September 9, 2025. No. 25-284.

illegal for minors, a scenario not at issue in this case. HB 1181 (the law at issue in *FSC*), unlike HB 900, regulates commercial pornography, which incorporates the *Miller/Ginsberg* test, not constitutionally protected speech. 145 S. Ct. 2291 (2025). HB 1181 provides an online age-verification process required to access content that is obscene as to minors. By contrast, this case concerns book rating provisions of HB 900 ("Rating Requirements") that regulate constitutionally protected expressive works (without the requisite *Miller/Ginsberg* guardrails), broadly target protected speech as to minors, and substantially burden the speech of adults by requiring booksellers to issue book ratings and restricting their rights to distribute books. Indeed, the *FSC* court explained that laws that directly regulate protected speech, like HB 900, are subject to strict scrutiny, which is "fatal in fact absent truly extraordinary circumstances." *Id.* at 2309-2310. HB 900 is also subject to strict scrutiny because it compels Plaintiffs to issue book ratings and adopt the government's "corrected ratings" in violation of their sincerely held beliefs. *See Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 766 (2018) (laws that compel speech are content-based and subject to strict scrutiny).

## II.    FACTUAL BACKGROUND

**A.    The Fifth Circuit's *en banc* decision in *Llano County* is limited to the narrow holding that individuals cannot invoke the right to receive information to challenge a public library's collection decisions. A majority of judges *rejected* the government speech argument.**

In *Llano County*, library patrons sued librarians and other county officials for violating their First Amendment rights by removing 17 books involving racial and sexual themes. A majority of the *en banc* Fifth Circuit (10 judges) dismissed plaintiffs' First Amendment claims and held that individuals cannot invoke the right to receive information to challenge a public library's collection decisions.138 F.4th at 845.

With regard to the government speech question, only a minority of the Fifth Circuit (seven

judges) found that a public library's collection decisions are government speech and therefore not subject to a First Amendment challenge under *Shurtleff v. City of Boston, Massachusetts*, 596 U.S. 243, 252 (2022). *Id*. at 860-862. A majority of the *en banc* court (three judges in the majority and seven dissenting judges) rejected this theory, leaving it with no precedential effect.

**B.     In *FSC*, the Fifth Circuit enjoined the compelled health-warning requirements of HB 1181, and SCOTUS applied intermediate scrutiny to the age-verification requirements, but reaffirmed the application of "strict scrutiny" to regulations of constitutionally protected speech and emphasized its "fatal in fact" nature.**

*FSC* concerned the constitutionality of Texas's HB 1181, which applies to commercial pornographic websites, and has two main components: (1) age-verification requirements and (2) health-warning requirements. 95 F.4th 263, 267 (5th Cir. 2024) ("*FSC I*"). The Fifth Circuit preliminarily enjoined the health-warning requirements under intermediate scrutiny because it found that they were commercial speech and Texas did not make an adequate showing that the warnings would, in fact, alleviate the alleged harms of pornography and failed to adequately tailor the warnings to its purported interest. *Id*.  at 283 (relying on *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980)).[4]

On appeal, the U.S. Supreme Court only considered which level of scrutiny applies to the law's age-verification requirements and applied intermediate scrutiny. The Court rejected the argument that rational basis review applies because it is reserved for laws that do not implicate "fundamental constitutional rights at all." 145 S.Ct. 2291 at 2316 ("*FSC II*"). The Court explained that laws that "directly regulate protected speech" are subject to strict scrutiny, which is "fatal in fact absent truly extraordinary circumstances." *Id*. at 2310.

---

[4] The Court also found that rational basis review under *Zauderer* did not apply because the health warnings requirements, like the Rating Requirements, were not both purely factual and uncontroversial. *Id*. at 281-282.

## III.  ARGUMENT

**A.**  *Llano County***'s narrow holding does not apply to this case or alter the conclusions of this Court and the Fifth Circuit that HB 900 is unconstitutional.**

*Llano County* has no impact on this case. The majority's holding—that individuals "cannot invoke the right to receive information to challenge a library's removal of books"—does not affect the constitutionality of HB 900. 138 F.4th at 845. Plaintiffs do not challenge "a library's removal of books." In the Notice, Defendant intimates this case is merely about the First Amendment right to receive information on behalf of students, glossing over the swath of constitutional infirmities found by this Court and affirmed by the Fifth Circuit involving compelled speech, vagueness, and prior restraint, among others. In fact, Plaintiffs only include the right to receive information and cite to *Pico* and *Campbell* in their summary judgment briefing as one of *many* reasons why HB 900 is unconstitutionally overbroad. Dkt. 88 at 23, n.19, 27; Dkt. 92 at 14.

 Setting aside the students' "right to receive information," the Rating Requirements are independently overbroad as to booksellers and authors because they "prohibit a substantial amount of protected speech" relative to their "plainly legitimate sweep." *United States v. Hansen*, 599 U.S. 762, 770 (2023); *see also Seals v. McBee*, 898 F.3d 587, 597 (5th Cir. 2018) (laws are substantially overbroad when they "sweep so broadly, encompassing any number of constitutionally protected" rights). Specifically, the rating definitions, together with the requirement to rate and TEA's oversight, "deter or chill constitutionally protected speech" by booksellers and cause authors to self-censor, such that "society will lose their contributions to the marketplace of ideas." *Hansen*, 599 U.S. at 770. The Rating Requirements have caused, and will continue to cause, authors to stop writing on important topics that may be perceived as "sexually explicit" or "sexually relevant" to avoid public backlash and in order to be able to sell books to Texas schools. *See* Dkt. 88 at 33 (citing extensive testimony from Plaintiffs).

The Rating Requirements are also overbroad because they employ a one-size-fits-all approach and do not consider the ages, maturity, or reading level of students; differing community and school standards; the variety of schools or school districts; or any aspects of the *Miller/Ginsberg* standard, including the "literary, artistic, political, or scientific value" of a book (unlike HB 1181 in *FSC*). Such a broad regime "encroaches upon speech in a constitutionally overinclusive manner." *ACLU v. Ashcroft*, 322 F.3d 240, 266 (3d Cir. 2003), *aff'd*, 542 U.S. 656 (2004).

**B.**    ***FSC II* only reaffirms that HB 900 is subject to and fails strict scrutiny.**

   **1.    HB 900 is presumptively unconstitutional and not narrowly tailored to serve compelling state interests.**

Strict scrutiny applies because HB 900 directly regulates speech protected as to adults by requiring booksellers to issue book ratings and restricting their rights to distribute books. *FSC II*, 145 S. Ct. at 2310 (laws that directly regulate protected speech are subject to strict scrutiny). Strict scrutiny also applies because HB 900 compels Plaintiffs to issue book ratings and adopt the government's "corrected ratings" in violation of their sincerely held beliefs. Courts have consistently found that laws that compel speech are content based and subject to strict scrutiny. *See, e.g., Becerra*, 585 U.S. at 766;[5] *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.,* 487 U.S. 781, 797 (1988);[6] *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1117 (9th Cir. 2024) (it is "well-established" that the forced disclosure of information "triggers First Amendment scrutiny").[7] In

---

[5] In *Becerra*, the U.S. Supreme Court found that a law that compelled pregnancy centers to disseminate notices stating the existence of publicly funded family-planning services was unconstitutional because it was a content-based regulation of speech subject to strict scrutiny and was not "narrowly tailored to serve compelling state interests." 585 U.S. at 766.

[6] In *Riley*, the U.S. Supreme Court struck down a North Carolina law that compelled fundraisers to disclose information about contributions was a content-based law determining it failed strict scrutiny. 487 U.S. at 797 ("[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech" and is a "content-based regulation of speech").

[7] In *Bonta*, the Ninth Circuit explained that a California law requiring businesses to prepare reports

each of these instances, the laws were stricken.

Far from supporting Defendant's position, the *FSC* court reiterated that strict scrutiny is "the most demanding test known to constitutional law," and laws subject to strict scrutiny, like HB 900, "are presumptively unconstitutional." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *FSC II*, 145 S. Ct. at 2310 (strict scrutiny is "designed to enforce the fundamental principle that governments have no power to restrict expression because of its message, its ideas, its subject matter, or its content"). Strict scrutiny is "fatal in fact absent truly extraordinary circumstances" not present here. *FSC II*, 145 S. Ct. at 2310. Indeed, "[i]n the First Amendment context, [the Supreme Court has] held only once that a law triggered but satisfied strict scrutiny—to uphold a federal statute that prohibited knowingly providing material support to a foreign terrorist organization." *Id.* (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27–39 (2010)).

As explained in Plaintiffs' briefing (Dkt. 88 at 24-25, 90 at 19, 92 at 13-14), HB 900 does not survive strict scrutiny because it is not "narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. Instead, an array of less restrictive alternatives that would serve the government's purpose are available. *United States v. Playboy Entm't Grp.*, 529 U.S. 803, 813 (2000) ("If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative."). The government could, for example, issue the ratings itself.

That the State alleges that "Texas's interest in shielding children from sexual content is important" (Dkt. 106 at 1) does not insulate HB 900 from strict scrutiny. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213-214 (1975) ("Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from

_____

about potential harm to children is subject to strict scrutiny and unconstitutional because, like HB 900, it forces the disclosure of information. 113 F.4th at 1117-1119.

ideas or images that a legislative body thinks unsuitable for them."). Nor does "the interest in protecting children . . . 'justify an unnecessarily broad suppression of speech addressed to adults.'" *FSC I*, 95 F.4th at 273.

### 2. HB 900 is unconstitutional, even under intermediate scrutiny.

Intermediate scrutiny does not apply because the Rating Requirements are nothing like the *FSC* requirement to show a driver's license (as is routinely done at retail outlets, airline ticket counters, and liquor stores) prior to accessing content deemed "obscene as to minors" on the internet. Having previously determined commercial speech was at issue in *FSC I*,[8] the Court in *FSC II* applied intermediate scrutiny to the age-verification requirements because they (1) target speech that is unprotected as to minors under *Miller/Ginsberg* and (2) only "incidentally" burden protected adult speech because once an adult shows proof of age, they may exercise their First Amendment rights. 145 S. Ct. at 2306. By contrast, HB 900 is not an age-verification law, involves constitutionally protected works, and does not target mere unprotected speech as to minors. The definitions of "sexually explicit material" and "sexually relevant material" cover wide swaths of books, not only those that are unprotected as to minors under *Miller/Ginsberg*. Those definitions also include constitutionally protected works like *Lonesome Dove* and other classics that have literary, scientific, political, or artistic value. And HB 900 imposes substantial (not merely "incidental") burdens on protected adult speech by restricting booksellers' rights to distribute books without complying with the Rating Requirements, which is a much more complicated and burdensome process than showing an ID.

Even so, HB 900 would fail intermediate scrutiny because Defendant does not show that

---

[8] As this Court and the Fifth Circuit previously held, HB 900 does not involve commercial speech because the book ratings themselves are expressive and communicate ideas. *See* Dkt. 43 at 38-40, Dkt. 90 at 28-9, Dkt. 92 at 19-20, Dkt. 186-1 at 29-31.

the third and fourth *Central Hudson* factors—that HB 900 advances the governmental interest asserted and is sufficiently tailored to the purported government interest—are satisfied. *FSC I*, 95 F.4th at 283-284. Defendant has not presented evidence showing that the Rating Requirements would, "in fact," alleviate the purported government harms "to a material degree." *FSC I*, 95 F.4th at 283-284. Nor has Defendant presented evidence that the Rating Requirements are sufficiently tailored to the government interests, as explained above. *See id*; *Turner Broadcasting System, Inc. v. FCC*, 520 U.S. 180, 189 (1997) (to satisfy intermediate scrutiny, the government must prove that it does not "burden substantially more speech than is necessary to further the government's legitimate interests."). Indeed, Defendant has provided no explanation as to the overreach into constitutionally protected works, the failure to consider literary, artistic, scientific or political value of works, and the refusal for TEA (or another government entity) to rate the books themselves to address their concerns.

### 3.    Rational basis review does not apply.

In its MSJ briefing, Defendant argues that HB 900 is subject to rational basis review under *Zauderer*. Dkt. 89 at 24-25. Now, Defendant argues that HB 900 is subject to rational basis review because HB 900 is government speech. Dkt. 106 at 4-5. Both arguments fail. While the Supreme Court upheld the result in *FSC I*, it unquestionably repudiated the rational basis review standard's application in that case. As the Supreme Court explained, rational basis is reserved for laws that "do not implicate fundamental constitutional rights at all." *FSC II*, 145 S. Ct. at 2316 (internal quotations omitted). That is clearly not the case here.

#### a.    HB 900 is not subject to rational basis review under *Zauderer* because it requires booksellers to issue subjective, controversial ratings.

The Fifth Circuit has already held that rational basis review under *Zauderer* does not apply because the ratings are highly subjective—not purely factual—and they compel speech on a

controversial topic about which books belong in schools. Dkt. 186-1 at 31; *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985) (laws that are "purely factual and uncontroversial" are subject to rational basis review); *Becerra*, 585 U.S. at 769 (*Zauderer* did not apply to a California law requiring clinics to disclose controversial medical information). As Judge Willett explained, HB 900 "requires vendors to undertake contextual analyses, weighing and balancing many factors to determine a rating for each book. Balancing a myriad of factors that depend on community standards is anything but the mere disclosure of factual information. And it has already proven controversial." Dkt. 186-1 at 31. Legislative hearings about HB 900 garnered extensive media attention, and the availability of books in public-school libraries has been a controversial topic of debate throughout the country. *Id*. at 31, n.127.

### b.    The ratings are not government speech.

The U.S. Supreme Court has counseled that the government speech doctrine should be applied narrowly. *See Matal v Tam*, 582 U.S. 218, 235 (2017) (government speech doctrine "is susceptible to dangerous misuse"). Despite that command, Defendant seeks to expand its reach by misstating the holding in *Llano County* and incorrectly arguing that it applies to this case. A majority of the *en banc* court (10 judges) did not find that library collection choices are government speech (only 7 did). *Llano County*, 138 F.4th. at 837. Thus, the seven judges' finding that a library's collection decisions are government speech is not binding on this Court. In any event, their minority view does not apply because this case concerns book ratings provided by private booksellers, not curation decisions of public libraries.

The Fifth Circuit has already opined on this issue in this case and rejected Defendant's government speech argument. As Judge Willett explained, under the *Shurtleff* factors, book ratings under HB 900 are the vendor's speech, not government speech, because (1) there is no history of

book ratings; (2) the public is likely to attribute the ratings to vendors, not the TEA; and (3) the vendors must issue corrected ratings, which are placed on the TEA's website and attributed to the vendors. Dkt. 186-1 at 25-27. *Shurtleff* remains binding and dictates that the Rating Requirements are not government speech. 596 U.S. at 252.

## IV.    <u>CONCLUSION</u>

As explained above, the Notice does not alter the legal or factual landscape of this case. It merely apprizes the Court of two irrelevant cases: *Llano County* for which Defendant misconstrues the holding, and *FSC* for which Defendant misleads the Court on the level of scrutiny. Those cases do not undermine the well-established constitutional defects in HB 900 previously identified by this Court and the Fifth Circuit whose sound analysis are demonstrated by already having been cited by nearly fifty subsequent courts in just two years' time. As explained in Plaintiffs' MSJ briefing, the Rating Requirements compel private speech, are impermissibly vague, and substantially burden protected expression without being narrowly tailored to serve a compelling state interest. Accordingly, Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment and enter a Permanent Injunction preventing the enforcement of the Rating Requirements.

Respectfully submitted,

*/s/ Laura Lee Prather*
Laura Lee Prather
Texas Bar No. 16234200
laura.prather@haynesboone.com
Catherine L. Robb
Texas Bar No. 24007924
catherine.robb@haynesboone.com
Michael J. Lambert
Texas Bar No. 24128020
michael.lambert@haynesboone.com
Reid Pillifant
Texas Bar No. 24126157
reid.pillifant@haynesboone.com

**HAYNES AND BOONE, LLP**
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 22nd day of September 2025, a true and correct copy

of the above document was served via the CM/ECF system to all counsel of record.


*/s/ Laura Lee Prather*
Laura Lee Prather