# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| BOOK PEOPLE, INC., VBK, INC., AMERICAN BOOKSELLERS ASSOCIATION, ASSOCIATION OF AMERICAN PUBLISHERS, AUTHORS GUILD, INC., COMIC BOOK LEGAL DEFENSE FUND<br>*Plaintiffs,*<br><br>*v.*<br><br>MARTHA WONG, KEVIN ELLIS, MIKE MORATH, AMICI ASSOCIATION OF UNIVERSITY PRESSES, BARNES & NOBLE BOOKSELLERS, INC., FREEDOM TO READ FOUNDATION, FREEDOM TO LEARN ADVOCATES, AMERICAN ASSOCIATION OF SCHOOL LIBRARIANS, ASSOCIATION OF UNIVERSITY PRESSES, BARNES & NOBLE, INC.<br>*Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § | CIVIL NO: 1:23-CV-00858 |

## <u>ORDER</u>

The Texas Legislature passed HB900, also known as READER, in 2023. The law aimed to regulate the content of books that are made available in public school libraries. This Court recognizes that the state has a strong interest in what children are able to learn and access in schools, and that children should certainly be protected from obscene content in the school setting. However, this Court previously enjoined READER in 2023. Facing the same issues, this Court finds the same result: READER misses the mark on accomplishing its goal and is unconstitutional.

## I.        BACKGROUND

Before the Court is Plaintiffs' Book People, Inc. ("Book People"), VBK, Inc. d/b/a Blue Willow Bookshop ("Blue Willow Bookshop"), American Booksellers Association ("ABA"), Association of American Publishers ("AAP"), Authors Guild, Inc. ("Guild"), and Comic Book

1

Legal Defense Fund's ("Plaintiffs") Motion for Summary Judgment (ECF No. 88) and Defendant Mike Morath's Motion for Summary Judgment on Plaintiffs' First and Fourteenth Amendment Claims (ECF No. 89). Having considered the parties' briefs, the record, and the relevant law, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 89) is **DENIED**, and Plaintiffs' Motion for Summary Judgment (ECF No. 88) is **GRANTED-IN-PART** as set out below.

In 2023, the Texas Legislature passed House Bill 900, and Governor Greg Abbot signed it into law, in the process, naming it Restricting Explicit and Adult-Designated Educational Resources Act ("READER"). Tex. H.B. 900, 88th Leg., R.S. (2023). The Act was designed to regulate access to school library books deemed "sexually explicit" or "sexually relevant." ECF No. 19 at 2. The law was to go into effect September 1, 2023, but was enjoined by this Court. *See* ECF No. 43 (preliminarily enjoining certain provisions of READER).

READER aims to accomplish its goal of regulating books in public school libraries by requiring:

• The Texas State Library and Archives to create standards for "sexually explicit" and "sexually relevant" materials;

• Booksellers to categorize any books they sell or have ever sold to schools according to those standards and issue a recall for any "sexually explicit" materials that they sold to schools;

• Schools to refrain from purchasing any "sexually explicit" materials and to remove "sexually explicit" existing materials from their libraries;

• Librarians to obtain parental consent for students to read or check out any books rated "sexually relevant;"

• The Texas Education Agency to oversee the ratings, which includes the power to overrule a vendor's rating;

• Booksellers who do not comply with the rating system (or the overruled ratings) to not sell any books at any of the schools.

Tex. Educ. Code §§ 35.002(a)–(d), 35.003(a), (d), 35.005.READER's requirements target "[l]ibrary material vendor[s]," which includes "any entity that sells library material to a public primary or secondary school in this state." *See* Tex. Educ. Code § 35.001(1). READER requires vendors to assign one of three ratings to library materials: "sexually explicit", "sexually relevant", or "no rating." Tex. Educ. Code §§ 35.001, 35.003. "Sexually relevant material" is defined as "any communication, language, or material, including a written description, illustration, photographic image, video image, or audio file, other than library material directly related to the curriculum required under Section 28.002(a), that describes, depicts, or portrays sexual conduct, as defined by Section 43.25, Penal Code." § 35.001(3).[1]

To determine whether materials should be categorized as "sexually explicit," a vendor must determine whether the "sexually relevant material" is described or portrayed in a way that is "patently offensive" as defined by Penal Code Section 43.21. Tex. Educ. Code §§ 33.021(a); 35.001(2). This definition requires Plaintiffs to determine, for each book, whether it is "so offensive on its face as to affront current community standards of decency." Tex. Penal Code § 43.21(a)(4). READER fails to provide guidance on what community standard applies, and fails to follow the definition of obscenity approved by the Supreme Court:

---

[1] The definition of "sexual conduct" seemingly encompasses any sexual-related topic. As defined in Texas Penal Code § 43.25 (a)(2), "Sexual conduct" means sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual
bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola."

> (a) whether 'the average person, applying contemporary community
>
> standards' would find that the work, taken as a whole, appeals to the
>
> prurient interest, (b) whether the work depicts or describes, in a
>
> patently offensive way, sexual conduct specifically defined by the
>
> applicable state law, and (c) whether the work, taken as a whole,
>
> lacks serious literary, artistic, political, or scientific value.

*Miller v. California*, 413 U.S. 15, 24 (1973) (citation omitted). Therefore, a book might be designated as "sexually explicit" under READER's requirements, while it would not be considered obscene.

After the vendors assign a rating for the material previously sold to public schools, the Texas Education Agency ("TEA") must post vendors' lists of ratings "in a conspicuous place on the agency's Internet website as soon as practicable." Tex. Educ. Code § 35.002(e). But what is published as a vendor's list may not reflect the rating the vendor itself applied. The TEA is authorized to review the ratings and notify the vendor if material is incorrectly rated in the TEA's opinion. *Id.* § 35.003(a)–(b) The TEA has the power to change the vendor's rating to what it deems to be the "correct" rating and publish that rating as part of the vendor's list. *Id.* § 35.003(c).

READER gives the TEA this power to substitute its own speech for a vendor's without imposing any restrictions on the TEA's use of that power. If the TEA chooses to re-rate a book, the vendor is given only 60 days to adopt the TEA's rating or be censured and placed on a public list that shows failure to comply with the TEA's requirements. *Id.* § 35.003(b)–(c). Public schools are then prohibited from purchasing library materials from vendors on that list. *Id.* § 35.003(d). Thus, the vendors must forego their own determinations and allow the TEA to exercise its unilateral rating authority or forego doing business with public schools. To do business with public

schools, vendors must accept that the TEA is allowed to publish its own determination as the vendor's own. Vendors have no mechanism to appeal the TEA's determination. They must simply accept the substituted speech, or lose their ability to sell library materials to public schools.

Additionally, after submitting ratings, vendors must issue a recall for "all copies" of material rated "sexually explicit"—either by itself or by the TEA—which were previously sold to public schools and currently "in active use by the district or school." *Id.* § 35.002(b). It remains unclear, as it was at the preliminary injunction stage, what "active use" means. Vendors have no way to determine what books are in "active use" by a district or school.

Plaintiffs are a collection of book sellers, publishers, and authors who sued officials from the Texas State Library and Archives Commission ("TSLAC"), Texas State Board of Education ("TSBE"), and the Texas Education Agency ("TEA") for violations of their First and Fourteenth Amendment rights. *See* ECF No. 1 at 2–7. This Court in 2023 granted the Plaintiffs' motion for a preliminary injunction, enjoining sections 35.001, 35.002, 35.0021, and 35.003 of READER. ECF No. 43. The Fifth Circuit affirmed in part, but vacated this Court's ruling as to two defendants, Martha Wong and Kevin Ellis, finding that Plaintiffs' injuries were only traceable to the TEA Commissioner Morath. *Book People, Incorporated v. Wong*, 91 F.4th 318 (5th Cir. Jan. 17, 2024). On remand, this Court was presented with Defendant Morath's Motion for Summary Judgment on Plaintiffs' First and Fourteenth Amendment Claims, and Plaintiffs' Motion for Summary Judgment. *See* ECF No. 88 (Plaintiffs' Motion); ECF No. 89 (Defendant's Motion).

Defendant's motion raised many of the same issues previously before this Court and the Fifth Circuit: attacking Plaintiffs' standing under Article III, claiming sovereign immunity bars Plaintiffs' claims, arguing the First Amendment is not violated, arguing that Texas is acting as a consumer and is merely exercising its power to not fund sexually explicit school library books,

that Plaintiffs have no irreparable harm under READER, that the governmental speech and commercial speech exceptions both apply to READER, and that Plaintiffs' facial challenges to READER fail. ECF No. 89. Plaintiffs argue that READER is unconstitutional and that they are entitled to permanent injunctive relief. ECF No. 88.

The issue before this Court is whether the State of Texas may enforce a law to regulate public school library materials that compels Plaintiffs to forgo their First Amendment rights and comply with a series of vague requirements. Again, this Court holds that it may not, in the manner READER aims to employ.

## II.    LEGAL STANDARD

### A.  Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by either "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When parties file cross-motions for summary judgment, the Court examines "each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

### B.  Permanent Injunction

To receive a permanent injunction, a plaintiff must first establish success on the merits and then meet a four-part test showing that: (1) it has suffered an irreparable injury; (2) remedies

available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006).

## III.    DISCUSSION

### A.  Plaintiffs have Article III standing to challenge READER and their claims are not barred by sovereign immunity.

Defendant challenged Plaintiffs' standing at the inception of litigation and both this Court and the 5th Circuit found that Plaintiffs established standing, ripeness, and the lack of sovereign immunity. ECF No. 30 at 3–26; ECF No. 43 at 16–23; *Book People*, 91 F.4th at 328–336. The Defendant again challenges Plaintiffs' standing, so the Court will address whether Plaintiffs have standing and whether sovereign immunity bars their claims.

#### a.  Plaintiffs have Article III standing.

To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The alleged "injury in fact" will only suffice if it is "concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013). Economic injury is a quintessential injury upon which to base standing. *E.g. Tex. Dem. Party v. Benkiser,* 459 F.3d 582, 586 (5th Cir.2006) (citing *Barlow v. Collins,* 397 U.S. 159, 163–64 (1970)).

Plaintiffs can demonstrate injury in fact in a pre-enforcement challenge by showing that: "(1) [they] intend[] to engage in a course of conduct arguably affected with a constitutional interest; (2) that the course of action is arguably proscribed by statute; and (3) that there exists a

credible threat of prosecution under the statute." *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 215–16 (5th Cir. 2023) (citation omitted). If a plaintiff is an object of a regulation, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. *See Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015).

Defendant argues first that Plaintiffs have not demonstrated they intend to engage in a course of conduct affected with a constitutional interest as it relates to particular purchasers, because READER only establishes criteria for selling books to the State as a purchaser. ECF No. 89 at 9-10. Essentially, Defendant is arguing that Plaintiffs do not have a constitutional interest in forcing the sale of books to any purchaser of their choosing. *Id.* at 10. Yet Plaintiffs have established that they intend to continue selling books to Texas schools without assigning ratings to them. ECF No. 90 at 9. It is not merely the sale of books to public school purchasers that is being affected by READER; READER is compelling speech. Defendant attempts to classify READER as merely setting forth conditions for "the basis of the bargain" in selling books to schools. *Id.* at 10. That ignores what the law would actually do: compel Plaintiffs to rate books and adopt the governments' ratings as their own.

Defendant's second argument is that Plaintiffs have not demonstrated a credible threat of enforcement that is traceable to Commissioner Morath because he "cannot enforce the library-collection standards against Plaintiffs." *Id.* But, as the 5th Circuit explained, Defendant does enforce the Rating Requirements against Plaintiffs *through* Texas schools, who cannot buy books from Plaintiffs if they do not comply with the Rating Requirements. *See Book People*, 91 F.4th at 333. As the 5th Circuit explained, "[t]hat the State enforces READER through school districts is not fatal to Plaintiffs' standing. Courts have found that plaintiffs have standing to sue government

entities that injure them through another entity." *Id.* at 330. The State admits that Commissioner Morath is empowered to enforce READER against school districts, showing the school districts' purchasing decisions are determined or coerced through READER. Defendant's second argument does not reach a different result now than it did before.

Defendant's third argument against Article III standing is that a favorable decision would not redress Plaintiffs' injuries because the school districts themselves are making the decision of whether to buy or decline to buy books from Plaintiffs. ECF No. 89 at 11-12. For the same reasons just discussed, the Court disagrees with that argument. READER is being enforced against school districts. A favorable decision for Plaintiffs preventing READER's coercion would redress Plaintiffs' injuries.

The Court finds that Plaintiffs have shown there is (1) injury in fact—harm to constitutional rights and economic injury; (2) there is a causal connection between that injury and READER; and (3) a favorable decision would redress their injury. Thus, the Court finds that Plaintiffs have Article III standing.

### b. Sovereign immunity does not bar Plaintiffs' claims.

Defendant is not entitled to sovereign immunity because Plaintiffs seek injunctive relief against a state actor in his official capacity who bears a "sufficient connection" to the enforcement of the Rating Requirements. *Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017). Generally, "sovereign immunity bars private suits against nonconsenting states in federal court." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). This bar also applies to suits like this one "against state officials or agencies that are effectively suits against a state." *Id.* Under the *Ex parte Young* exception to sovereign immunity, however, a plaintiff can seek prospective injunctive relief "against individual state officials acting in violation of federal

law." *Id.* These state officials must "have some connection with the enforcement of the allegedly unconstitutional law." *United States v. Abbott*, 85 F.4th 328, 337 (5th Cir. 2023) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908).

Defendant argues that Commissioner Morath is tasked with a responsibility that is "predominantly repertorial in nature: to post the ratings received from library vendors compliant with READER on the TEA's website, and to determine and appropriately list which library material vendors have not complied with the ratings requirements of READER." ECF No. 89 at 13-14. Plaintiffs argue that Commissioner Morath is ultimately responsible for collecting lists of ratings, reviewing booksellers' ratings, notifying booksellers when their ratings are overridden, and posting lists of ratings and booksellers on the TEA website. ECF No. 90 at 16. Further, Commissioner Morath is responsible for ensuring that public schools comply with READER's prohibition on buying books from non-compliant booksellers. *Id.* The Court agrees with Plaintiffs that sovereign immunity does not apply due to Commissioner Morath's "sufficient connection" to the enforcement of the Rating Requirements. Moreover, the Court finds that Commissioner Morath's duties under READER are not purely discretionary, because the law requires the TEA to take certain enforcement actions. Among those actions is compelling booksellers' speech by re-rating materials and publishing those as the vendors' own rating. Therefore, the *Ex Parte Young* exception applies here, and Plaintiffs' claims are not barred by sovereign immunity.

## B. Defendant's arguments do not save READER.

### a. The government speech exception does not apply to READER.

Defendant argues again that the governmental speech exception applies to READER, because Texas is within its authority to require ratings as a condition of purchase. ECF No. 89 at 22–24. Defendant cites only to Justice Ho's dissent from the 5th Circuit's denial of rehearing en

banc, and does not otherwise explain how the 5th Circuit was incorrect when it found that the government speech exception does not apply to READER's Ratings Requirements. *See* ECF No. 89 at 24; *but see Book People*, 91 F.4th at 336–38. The Court agrees with the 5th Circuit's detailed analysis of this issue and ultimate conclusion that the Ratings Requirements are the vendor's speech, not the government's. *Id.* at 338.

### b. The commercial speech exception does not apply to READER.

Defendant also argues again that the commercial speech exception applies to READER. ECF No. 89 at 24–26. Defendant argues that the speech READER compels is "simply a description of the saleable goods they seek to transfer to purchasers," and thus commercial. *Id.* at 24. Defendant argues that *Zauderer* applies here because the ratings are "purely factual and uncontroversial" and "reasonably related to the State's interest," so it should be upheld like the disclosure requirements were upheld there. *See id.*; *see also Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 651 (1985). Again, the Court agrees with the detailed analysis of the 5th Circuit and its conclusion that READER's Rating Requirements are neither factual nor uncontroversial. *See Book People*, 91 F.4th at 340. READER requires vendors to undertake deeply contextual analyses balancing a myriad of community standards. It also is deeply controversial to label a piece of literature "sexually explicit" without regard to any literary or artistic value. Therefore, the commercial speech exception and *Zauderer* do not apply to READER's Rating Requirements.

### c. Texas is not merely acting as a consumer expending funds for library book purchases under READER.

Defendant argues that READER does not compel speech because it only treats public schools as "consumers with important questions about the goods they intend to purchase." ECF No. 89 at 17. Defendant attempts to classify READER as a "consumer demand," rather than a

bookselling regulation. *Id.* at 18. Because the government may allocate its funding and selectively fund programs to encourage certain activities, Defendant argues that READER is merely the State's way of choosing to not expend funds on certain sexually explicit books. *Id.*

The Court rejects Defendant's attempted characterization of READER. The Court agrees with Plaintiffs that READER is compelling speech and is a bookselling regulation. READER does not just set forth preferences for selectively funding book purchases. READER requires Plaintiffs to rate books and accept the TEA's re-ratings. Tex. Educ. Code §§ 35.002(a); 35.003(d). READER prohibits booksellers from purchasing books from noncompliant booksellers. *Id.* § 35.003(d). READER imposes unconstitutional conditions on a party's ability to contract with the government, because it requires Plaintiffs to surrender their First Amendment rights in order to do any business with public schools. The government may not deny Plaintiffs the right to sell books to public schools on a basis that infringes their constitutionally protected interests. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (if the government can deny a benefit because of constitutionally protected speech, the exercise of those freedoms would be in effect penalized and inhibited).

READER unconstitutionally compels Plaintiffs to make controversial statements against their will and accept the TEA's ratings as their own, in violation of their sincerely held beliefs. *See 303 Creative LLC v. Elenis*, 600 U.S. 570, 585-87 (2023) (holding the First Amendment protects against the government compelling a person to speak its own preferred messages). READER also compels Plaintiffs to assign ratings to books when they would prefer not to. The First Amendment protects against the government compelling a person to speak its message when he would prefer to remain silent or to include ideas within his speech that he would prefer not to include. *See id.* at 586; *see also Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 568-570

(1995)). Regardless of Defendant's attempt to recharacterize READER as a law of "consumer demand," the Court finds that it is a bookselling regulation that unconstitutionally compels speech.

### C.  Plaintiffs have shown that READER is unconstitutional.

#### a.  READER compels speech in violation of the First Amendment.

The government cannot (1) compel speech if the speaker chooses to remain silent, nor can it (2) compel a speaker to adopt the government's speech. *See id.* Plaintiffs correctly argue that the Rating Requirements "flagrantly flout both these core constitutional tenets as a matter of law by compelling Plaintiffs to make controversial statements against their will and acquiesce to the government's preferred messages in violation of their sincerely held beliefs." ECF No. 88 at 12. Defendant argues in response the same re-characterization attempt: READER only sets statutory requirements for the State as a consumer of books, rather than regulating the market of all book sales. ECF No. 91 at 3. Defendant argues READER is entirely different from the accommodation law at issue in *303 Creative*, because there the state was placed in the role of regulator over the plaintiff operating her web design business at all. *Id.* (citing *303 Creative*, 600 U.S. at 580.). Defendant's argument to re-characterize this law as anything but a bookselling regulation that compels speech is unsuccessful.

If Texas's aim was solely to create conditions for the State to purchase books for its public school libraries, it failed to accomplish that with READER. READER operates in a way that fully compels Plaintiffs' speech—violating both prongs of the prohibition discussed in *303 Creative*. First, READER compels Plaintiffs' speech when they would choose to remain silent, because Plaintiffs must assign ratings even if they would not want to. Second, READER compels Plaintiffs to adopt the government's speech because the TEA is allowed to re-rate books and publish its own

rating as being attributed to Plaintiffs. Plaintiffs have no choice but to accept the government's speech as their own.

Defendant argues that Plaintiffs can avoid compelled speech by avoiding sales to public schools and that vendors are not entitled to bookselling contracts and school districts are under no obligation to purchase from a particular vendor. Still, Defendant's argument rests on the notion that "should a vendor disagree with a TEA re-rating, the vendor can simply cease selling books to schools, and seek more agreeable clientele." ECF No. 91 at 4.

That argument also fails. READER denies Plaintiffs the benefit of selling to public schools on a basis that infringes their First Amendment rights—an unconstitutional condition. *See Bd. of Cnty. Commissioners, Wabaunsee Cnty., Kansas v. Umbehr*, 518 U.S. 668, 674 (1996) (citing *Perry*, 408 U.S. at 597). Defendant argues Plaintiffs were not making an unconstitutional conditions argument, because they were making a compelled speech argument. ECF No. 91 at 3, 7. But, Plaintiffs argued: "[READER] requires Plaintiffs to wade into the controversial topic of which books are suitable for Texas students or risk losing their ability to transact business with Texas public school[s]—a textbook unconstitutional condition." ECF No. 90 at 22. The Court agrees with Plaintiffs' unconditional condition argument, just as the Court agrees that READER unconstitutionally compels speech. READER *can* and *does* violate the First Amendment in several ways—the ways READER manages to violate the First Amendment are not mutually exclusive.

As this Court previously discussed in its order granting Plaintiffs a preliminary injunction, the government has the power to do the contextual ratings for the books itself. ECF No. 43 at 37. The government has the power to restrict what books its school purchase, within the confines of the Constitution, and there is a meaningful interest in curating educational content for children. *Id.* But those powers should be exercised by the state directly—not by compelling third parties to

perform it or risk losing any opportunity to engage in commerce with school districts. While READER may seek to achieve a noble and important goal, it cannot do so by compelling Plaintiffs' speech in both ways the Supreme Court has clearly forbidden. *See 303 Creative*, 600 U.S. at 585-87 (2023). The Court finds that the Ratings Requirements unconstitutionally compel speech.

### b. Certain provisions of READER are void for vagueness.

The Court agrees with Plaintiffs that READER is also unconstitutional for the independent reason that it is void for vagueness. A law is void for vagueness under the First Amendment when it (1) fails to provide a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly" or (2) fails to provide "explicit standards" for applying the law "to avoid arbitrary and discriminatory applications." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551 (5th Cir. 2008). A more stringent vagueness test applies when a law "interferes with the right of free speech." *Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982). Such laws may be constitutionally infirm where they "encourage arbitrary and discriminatory enforcement," or "have the capacity 'to chill constitutionally protected conduct, especially conduct protected by the First Amendment.'" *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 546 (5th Cir. 2008) (quoting *United States v. Gaudreau*, 860 F.2d 357, 360 (10th Cir. 1988)).

READER requires Plaintiffs to assign subjective, confusing, and unworkable Rating Requirements. Even the TEA could not clearly define how a book seller could determine whether a book is "sexually relevant," in "active use," "directly related to the curriculum," or which community standards apply. ECF No. 88 at 16 (citing to portions of TEA representative's deposition). There is a sixteen-step process Plaintiffs face under READER. To determine which books must receive a rating, booksellers must look at all prior sales (step 1), determine whether

the book is "directly related to the curriculum" which would result in no rating (step 2), and whether it is in "active use," which would also result in no rating (step 3). After step 1, READER's vague requirements already kick in: what is "directly related" to curriculum without a statewide curriculum? And what is in "active use"—does it have to be checked out a certain number of times? Actually be read start to finish? Booksellers do not know.

At steps 4-16, booksellers must determine what the rating should be for a single book by applying the multi-prong definitions of "sexually explicit" and "sexually relevant." While those have some relation to the penal code definitions, READER misses the critical third prong of the *Miller/Ginsberg* test for obscenity. *See Miller*, 413 U.S. at 24 (requiring obscene work to lack "serious literary, artistic, political, or scientific value"). So, at steps 4-16 booksellers are expected to apply a uniquely crafted test which without commonly accepted guidance or precedent. Simply looking for what would often be considered "obscene" is not instructive—because READER's test is not like the normal "obscenity" test standards.

At all steps beyond step 1, READER fails to provide booksellers a reasonable opportunity to know what is prohibited, because booksellers cannot reasonably know which books to initially assign no rating. Unclear standards for "directly related to the curriculum" and "active use" plague those first filtering steps. Steps 4-16 only make things worse for booksellers. While READER tries to set forth standards for applying those definitions, READER encourages arbitrary and discriminatory applications by failing to follow the accepted obscenity test. Moreover, READER's failure to account for a work's literary, artistic, political, or scientific value encourages ad hoc judgments which can vary from bookseller to bookseller. READER therefore qualifies as void for vagueness under both prongs of the test. *See Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551 (5th Cir. 2008). Independent of compelling speech, READER is unconstitutional on this basis.

Notably, however, READER is void for vagueness in its applications—how it requires vendors to act based on unclear guidelines. READER is void for vagueness because of what it does, as explained above in the sixteen-step process. But the Court does not extend this vagueness finding to every section of READER individually—it finds it is void for vagueness in combination and in its applications. As explained in § III.D.d, purely definitional sections will not be enjoined just because they are difficult to interpret, the law is void for vagueness based on how those definitions are applied.

### c. READER is an unconstitutional prior restraint.

Plaintiffs argue that the Rating Requirements are an unconstitutional prior restraint as a matter of law because they (1) prevent speech from occurring in the first instance and (2) provide no avenue for independent review. ECF No. 88 at 20 (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 61 (1963); *Alexander v. United States*, 509 U.S. 544, 550 (1993)). Plaintiffs argue that the Rating Requirements allow the government to prohibit *all* future sales of books to Texas schools, while preventing the opportunity to appeal final determinations to third parties or have them judicially reviewed. Plaintiffs argue that if a bookseller or TEA decides a book is "sexually explicit," all future distribution of that book to Texas schools is prohibited. But Plaintiffs point out that whether a book is "sexually explicit" under READER lacks any connection to the accepted *Miller/Ginsberg* test. *See Miller*, 413 U.S. at 24; ECF No. 88 at 17–18.  READER thus prevents the distribution of and access to books with literary, artistic, political, or scientific value. Therefore, READER may prohibit distribution of books that would be protected under the First Amendment as not obscene.

Defendant argues that the First Amendment permits reasonable restrictions on speech in public schools "to protect children…from exposure to sexually explicit, indecent, or lewd speech."

ECF No. 91 at 11 (citations omitted). Defendant argues that READER is a reasonable restriction on public schools that prevents them from using taxpayer funds to purchase sexually explicit materials and prohibits them from making those sexually explicit materials freely available to children via public school libraries. *Id.* at 12.

The Court agrees with Plaintiffs as it did in its preliminary injunction order that the Rating Requirements are an unconstitutional prior restraint. ECF No. 43 at 49. The settled rule is that a system of prior restraint 'avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system.' *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975) (citations omitted). A system of prior restraint runs afoul of the First Amendment if it lacks certain safeguards:

> First, the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. Second, any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. Third, a prompt final judicial determination must be assured.

*Id.* at 560. The Court agrees with Plaintiffs that the Rating Requirements are prior restraints because they prevent speech from occurring in the first instance by prohibiting the distribution of books possibly protected by the First Amendment. Furthermore, the Court agrees that the prior restraint is unconstitutional because it lacks adequate safeguards. The TEA has full authority to rate books and impose prohibitions, and there is no avenue for independent review by a third party or prompt judicial determination that such books can be lawfully banned.

Therefore, for this independent reason the Plaintiffs have shown that READER is unconstitutional. However, the Court's ultimate decision is most impacted by the analyses discussed above: the compelled speech and vagueness issues.

**d.  The Court need not address Plaintiffs' remaining constitutional challenges.**

Plaintiffs also made a series of constitutional arguments against READER, but the Court already concluded that READER unconstitutionally compels speech, is void for vagueness, and is an unconstitutional prior restraint. The Court therefore does not need to address Plaintiffs' arguments that READER facially violates the First Amendment (ECF No. 88 at 22-25), that it is substantially overbroad (ECF No. 88 at 26-28), and that it unconstitutionally delegates government authority to regulate speech to private entities (ECF No. 88 at 28-29). The Court will decline to address those arguments and grant Plaintiffs relief based on their successful showing of the merits in points addressed above.

**D.  Plaintiffs are entitled to permanent injunctive relief.**

Plaintiffs have established success on the merits, for all the reasons explained above. Plaintiffs have also shown that they are entitled to permanent injunctive relief under the four-part test.

**a.  Plaintiffs have shown they face irreparable harm if READER is enforced.**

Plaintiffs argue that they will suffer irreparable constitutional, reputational, and financial injuries if READER is not enjoined. ECF No. 88 at 29. Plaintiffs specifically point to the compliance costs which READER would impose as causing financial strain, which would be ongoing as they would need to continually review and rate books. *Id.* Plaintiffs argue that non-injunctive remedies cannot adequately compensate for the constitutional harms and reputational damages that they would face. *Id.*

Defendant argues that Plaintiffs have not shown irreparable harm because they have not provided sufficient evidence to show that rating books to comply with Rating Requirements would actually cause them a financial strain. ECF No. 91 at 18. Defendant also argues that Plaintiffs suffered no economic harm that is traceable to READER because they did not track revenue from

school orders versus non-school orders. *Id.* Overall, Defendant's argument on this point largely attacks any financial harm that Plaintiffs allege they face.

The Court finds that Plaintiffs have shown they face irreparable harm if READER is not permanently enjoined. While the parties dispute how much financial strain READER will cause the Plaintiffs, the Court finds that the constitutional and reputational harms alone warrant injunctive relief here. The Supreme Court has recognized that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (quoting 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995)). Plaintiffs face a severe loss of their First Amendment freedoms along with the risk to their reputation which accompanies compliance with a law such as READER. Plaintiffs have therefore shown that an injunction is required to protect them from irreparable harm.

### b. Money damages would be inadequate to compensate Plaintiffs.

As discussed in § III.D.a, Plaintiffs have shown that money damages would be inadequate to compensate for the harms that READER causes. Defendant's argument largely targeted Plaintiffs' failure to establish financial injury for the irreparable harm point, and did not address how monetary damages would adequately compensate Plaintiffs if the law is not enjoined. That is likely because Defendant would not be able to make an argument that monetary damages would be adequate. Monetary damages are inadequate to compensate for the loss of First Amendment Freedoms. *Legend Night Club v. Miller*, 637 F.3d 291 (4th Cir. 2011). Because of the irreparable

harm to Plaintiffs' First Amendment rights and reputation as earlier discussed, the Court finds that this factor favors granting a permanent injunction.

### c. The public and private interests favor permanent injunctive relief.

The Court's consideration of the third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiffs argue that both the balance of equities and public interest favor enjoining READER, because the First Amendment rights of Plaintiffs and others will be infringed if the injunction is not granted. ECF No. 88 at 30. Defendant argues that READER poses no threat to Plaintiffs' First Amendment rights "because no Plaintiff has a First Amendment right to force any party to purchase any book." ECF No. 91 at 20. Defendant argues again for these factors that Texas is free to determine how, and whether, it will expend its public funds on public interest programs. *Id.* Defendant argues that Texas has an interest in safeguarding against the provision of sexually explicit material to children. *Id.*

The Court agrees with Defendant's premise that Texas has an interest in safeguarding children against sexually explicit material—especially materials purchased with public funds for public schools. But the Court cannot agree with Defendant's assertion that Plaintiffs' First Amendment rights are not violated by READER. Defendant's continued attempt to recharacterize READER is still unconvincing. Both the third and fourth factors favor injunctive relief here. Even though the interest Defendant points to is a good and noble one, that does not outweigh the fact that READER tries to serve that goal in an unconstitutional way.

### d. Purely definitional sections will not be enjoined.

The primary difference between the previous occasion hearing arguments the preliminary injunction and hearing arguments for this permanent injunction is that Plaintiffs asked for additional provisions of READER to be enjoined. This Court previously enjoined §§ 35.001, 35.002, 35.0021, and 35.003 of READER. ECF No. 43. Plaintiffs now ask that the Court expand injunctive relief to include Sections 33.021(a), which defines "sexually explicit material," and 33.021(d)(2)(A)(ii), which incorporates the "sexually explicit material" definition into the Library Standards (13 Tex. Admin. Code § 4.2(c)). ECF No. 88 at 9–10. Plaintiffs express concern that the same term "sexually explicit material" appears in HB 183, introduced November 12, 2024. Tex. H.B. 183, 89th Leg. R.S. (2024) (introduced version). HB 183 would require the TSBE to permit parents to submit requests to the TSBE to review "library material" that a parent believes is (1) inappropriate for students in one or more of the grade levels for which the material is available, or (2) contains sexually explicit material." *See id.* § 35.151(a). Plaintiffs fear that if the additional sections defining that term and incorporating it into Library Standards are not enjoined, passage of the new Bill would "do an end-run around this Court's ruling that the definition is unconstitutional." ECF No. 88 at 10.

Yet HB 183 is not designed to compel vendors' speech like READER would. Even though HB 183 incorporates some of the same language from READER to categorize books, it does not function the same way that READER would. HB 183 would require that parents are allowed to raise challenges to certain books. It does not function in the same unconstitutional manner that READER would.

Though similar challenges to those definitions used in HB 183 may be brought, this Court does not hold that those sections must also be enjoined in order to afford Plaintiffs relief. READER will lose its unconstitutional effect when the existing sections are enjoined. The biggest problem of

READER stems from the State of Texas trying to compel speech and violate vendors' First Amendment rights. Its confusing web of vague definitions and standards are one component of that, but enjoining the specific sections pertaining only to definitions is not necessary to restore vendors' freedom. Plaintiffs will be fully protected by the same sections—§§ 35.001, 35.002, 35.0021, and 35.003—being permanently enjoined. With the same sections enjoined, Plaintiffs will not have to forgo their First Amendment rights and accept the TEA's speech being portrayed as their own to sell books to public schools in the State of Texas. Plaintiffs are therefore protected by the same injunctive relief, and this Court will grant them that relief permanently.

## IV.    CONCLUSION

The Court agrees with Defendant that Texas has a strong interest in regulating what children can access in schools and preventing inappropriate content from schools. But READER's methods are not the way to further that interest. Plaintiffs are correct that READER is unconstitutional as it compels speech, is void for vagueness, and is an unconstitutional prior restraint. Plaintiffs are therefore entitled to summary judgment and a permanent injunction against certain provisions of READER. Defendant is not entitled to summary judgment, because Plaintiffs' First and Fourteenth Amendment claims are all successful.

Therefore, the Court **ORDERS** that Defendant's Motion for Summary Judgment (ECF No. 89) is **DENIED.** Plaintiffs' Motion for Summary Judgment (ECF No. 88) is **GRANTED-IN-PART**.

**IT IS FURTHER ORDERED** that Commissioner of Education Mike Morath and all of his officers, agents, employees, attorneys, and other persons in active concert with him are **ENJOINED** from applying, enforcing, or attempting to enforce, either criminally or civilly, §§

35.001, 35.002, 35.0021, and 35.003 of HB 900, the Restricting Explicit and Adult-Designated Educational Resources (READER) Act.

**IT IS FINALLY ORDERED** that Plaintiffs may file a motion for attorney's fees within fourteen (14) days of this order.

All other relief not granted herein is **DENIED.**

**SIGNED** on October 21, 2025.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE